UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY CHERY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONDUENT EDUCATION SERVICES, LLC, *f/k/a ACS*, ACCESS GROUP, INC., and ACCESS FUNDING 2015-1, LLC,<br><br>Defendants. | Civ. No. 1:18-cv-75 (DNH/CFH)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Chery ("Plaintiff"), by his undersigned counsel, on behalf of himself and all other similarly situated, complaining of defendants Conduent Education Services, LLC, *f/k/a* ACS ("ACS"), Access Group, Inc. ("Access Group"), and Access Funding 2015-1, LLC ("Access Funding") (ACS, Access Group, and Access Funding, are, collectively, "Defendants"), alleges based upon information and belief and documents received in response to a Pennsylvania Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.,* request, as follows:

**PRELIMINARY STATEMENT**

1. This is a class action against Defendants for violations of New York General Business Law § 349, negligence, and breach of contract.

2. The class consists of borrowers of student loans whose Federal Direct Consolidation Loan Applications were improperly and wrongfully denied, delayed, or had loans removed because ACS failed to return a timely or complete Loan Verification Certificate ("LVC").

3.      According to the Consumer Financial Protection Bureau ("CFPB"), the process to consolidate FFELP student loans (defined below) into a Direct Consolidation Loan should take a total of 30 days.[1]  As part of the consolidation process, within ten business days, the holder of a student loan that receives a request must complete and return an LVC for a loan the borrower is seeking to consolidate into a Direct Loan (defined below). 34 C.F.R. 685.220(f)(1)(i).

4.      Notwithstanding this obligation, ACS had a pattern and long history of regularly failing to return LVCs within the mandated time period.

5.      The Department of Education has cautioned that because servicers are not compensated for loans transferred (i.e., consolidated with a new servicer) there "could be a disincentive for servicers" to assist borrowers with this process.[2]  Consistent with this warning, as detailed below, ACS delayed in responding to the LVC request sent in regard to Plaintiff's Federal Direct Consolidation Loan Application for many months, costing Plaintiff nearly a year of qualifying payments toward the Public Service Loan Forgiveness Program ("PSLF").

6.      ACS's delay in processing Plaintiff's LVC was not unique to Plaintiff. Documents produced in response to an RTKL request reveal that ACS's failure to deliver timely or complete LVCs was caused by systematic and internal issues at ACS, which harmed, thousands of similarly situated student loan borrowers.

7.      Notwithstanding the fact that ACS was aware of its internal issues, its resulting delays, and the damages ACS was causing, ACS failed to correct the problem in a timely manner, or compensate borrowers who were forced to incur added burdens, costs, and expenses associated with the delay.

---

[1] http://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf at p. 32.
[2] http://www.gao.gov/assets/680/677159.pdf at p. 23.

8. As the CFPB explained in a June 2017 report, when a servicer fails to certify loan balances in a timely manner the Direct Consolidation Loan cannot be originated or loans that are eligible for consolidation are left out of the Direct Consolidation Loan. These "servicing errors" harm borrowers by "prevent[ing] borrowers from making qualifying payments, and ultimately add years and potentially thousands of dollars to repayment."[3]

9. Plaintiff's claims against ACS are typical of members of the Class and are best asserted and resolved on a class-wide basis. Absent a Class action, individual borrowers will not have the platform or resources necessary to compel ACS to compensate them for the damages ACS caused.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

---

[3] http://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf at p. 32.

3

## PARTIES

12.     Plaintiff Jeffrey Chery had nine FFELP student loan accounts that were serviced by ACS from in or around April 2012 until December 2016 (the "Loans").  Plaintiff currently resides in the Commonwealth of Virginia.  Plaintiff resided in Queens, New York when the Loans were originated.  Plaintiff's address for communications with ACS was at all relevant times, and remains, his family's address in Queens, New York.

13.     Defendant ACS is a Delaware limited liability company.  ACS is registered to do business in the State of New York.  The ACS office responsible for student loan servicing operations and correspondence with Plaintiff is located in Utica, New York.  On January 1, 2017, ACS Education Services became part of Conduent Business Services, LLC.  As a subsidiary of Conduent Business Services, ACS became Conduent Education Services, LLC.

14.     Defendant Access Group is a Delaware corporation.  Access Group is registered to do business in the State of New York. Access Group was the owner of seven of the Loans.

15.     Defendant Access Funding is a Delaware limited liability company. Access Funding was the owner of two of the Loans.

## RELEVANT NON-PARTIES

16.     FedLoan Servicing ("FedLoan") is a department of the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which services student loans under the William D. Ford Federal Direct Loan Program ("Direct Loans").  Since 2012, FedLoan has been the servicer for PSLF, a program that provides the opportunity for borrowers to obtain forgiveness of their student loan debt if certain conditions are satisfied.

17.     FedLoan is one of four servicers of consolidation loans under the Direct Loan program ("Direct Consolidation Loans").  The other servicers of Direct Consolidation Loans are Great Lakes Loan Services, Inc. ("Great Lakes"), Nelnet, and Navient.

18.     FedLoan/PHEAA, Great Lakes, Nelnet, and Navient are referred to, collectively, as the "Direct Loan Servicers."

## STATEMENT OF FACTS

19.     Under the Federal Family Education Loan Program ("FFELP"), private lenders made federal student loans to students, and guaranty agencies insured these funds, which were, in turn, reinsured by the federal government.

20.     As a result of the Health Care and Education Reconciliation Act of 2010, FFELP was replaced with the Direct Loan Program.  Accordingly, no new FFELP loans were originated after July 1, 2010.

21.     Under the Direct Loan Program, federal student loans are made directly from the U.S. Department of Education to students.

22.     A borrower with FFELP loans must consolidate his/her loans with a Direct Consolidation Loan to receive the benefits of certain student loan repayment programs, including, but not limited to, PSLF.

23.     Under PSLF, Direct Loans are forgiven after a borrower, who works in full-time public service employment, makes 120 separate (not necessarily consecutive), on-time, monthly payments beginning any time after October 1, 2007.

24.     On or about February 4, 2016, Plaintiff submitted a Direct Consolidation Loan Application.  Plaintiff sought to consolidate the Loans to make qualifying PSLF payments.

5

Because Plaintiff was consolidating to participate in PSLF, his application was submitted to FedLoan.

25.     Upon receipt of Plaintiff's application, FedLoan sent an LVC to ACS to be completed by ACS.

26.     ACS was required to complete the LVC and return it to FedLoan within ten business days of having received it.

27.     On or about February 23, 2016, Plaintiff received an email from FedLoan notifying him that his consolidation application was denied through no fault of his own.  Upon receiving this news, Plaintiff called FedLoan, and was informed that his application was denied because ACS was required, but failed, to submit an LVC certifying the balances for each of the Loans.  FedLoan informed Plaintiff that FedLoan "always" experiences issues and delays with getting LVCs from ACS to certify loan balances.

28.     Immediately after talking to FedLoan, also on February 23, 2016, Plaintiff contacted ACS concerning the status of the LVC for his Loans.  On this call, ACS confirmed it had failed to complete the LVC within the required ten-day period, and admitted the LVC was still not completed as of the date of the call.

29.     Two weeks later, Plaintiff called ACS again and was told that the LVC was still not ready.  In early April 2016, Plaintiff called ACS again, and was told that the LVC had the required information for eight of the nine Loans, but ACS was still working on the LVC information for one of the Loans.  Between April and June, Plaintiff called ACS at least three more times, and each time was told that ACS was still working on the one remaining Loan for the LVC, and that the LVC could not be sent to FedLoan until the last Loan's information was completed.

30.     Finally, in or around December 2016 – approximately ten months after Plaintiff applied to have the Loans consolidated – FedLoan received the LVC for the Loans and Plaintiff's consolidation application was approved.

31.     As a result of ACS's delay, Plaintiff lost up to ten qualifying payments toward PSLF.  The delay in the consolidation process caused Plaintiff to pay approximately $1,056.66 without any corresponding credit toward PSLF.[4]

32.     Documents produced by PHEAA, in response to a RTKL request show that ACS's failure to deliver timely or complete LVCs was a pervasive problem.  The documents also show that this problem was caused by a systematic flaw in ACS's servicing system.

33.     In a January 8, 2015, email, titled, "ACS No LVC Returned," Tony Divel, a Production Support Analyst at PHEAA/FedLoan, conceded, "that we were missing a lot of LVC's for ACS, specifically for the CNSLDN [consolidation] loan program."

34.      To advance consolidation applications, PHEAA would remove loans that ACS did not provide a timely or complete LVC for from the application.  If a borrower requested to add the previously removed ACS loans back to the application the borrower was told, "unable to add ACS loans due to loans removed from consol [sic] due to prior servicer did not provide a clear LVC that meets the eligibility.  Loan(s) must be removed in order to advance the app."

35.     In a May 14, 2015 email, Melissa Johnson, a Manager at FedLoan, recounted that on a phone call with "Shawn" (presumably this refers to Shawn Hughes at ACS), regarding "Pending Financial Verification (PFV)," (i) "[h]e did not know the number of accounts affected, but stated a large volume," (ii) that the issue, "is getting a lot of attention" but "[u]nfortunately, they [ACS] are not able to allocate as many resources to the accounts as he wishes they could,"

---

[4] Plaintiff requested copies of his promissory notes from ACS, but only received one application.

(iii) the ACS call center is receiving calls about the LVC issue, but the "script that they read to divert the calls from the borrower" is "vanilla," and  (iv) Great Lakes is having the same problem.

36.     A June 2, 2015, document titled "Liaison Report – Issues Affecting Organization (All Statuses)," provides that, Jamie Napralla at Great Lakes, reported an issue concerning "Loan Consolidation – ACS/Xerox not responding to LVC's."  This document also notes that "FSA" (Federal Student Aid) is aware of the "situation with ACS/Xerox," and that "FSA has no power to force ACS to do anything since they do not have a contract with ACS."

37.     As shown in the following chart created by PHEAA, at least as early as May 2015, PHEAA developed a formal procedure to attempt to deal the with problems caused by

ACS's failure to deliver LVCs:

- LVC is received from ACS with a comment of "PEND FINANCIAL VERIFY"
- The 0584 fatal with populate on app
- Krystal's team will remove the ACS loans and will notate the account with the notation of 'Removd ACS loans from consol due to prior servicer did not provide a clear LVC that meets the eligibility. Loan(s) must be removd in order to advance the app.'
- If Customer Service is on a call with the borrower who has this notation, they will know that the account needs to be fixed by ACS before FLS is able to include the loan(s) in the consolidation.

↓

- Every Monday, Sarah will create a report that shows all applications that have ACS loans marked NOT TO CONSOL and have a comment of "PEND FINANCIAL VERIFY"
- Sarah will send report to ACS and ask if these accounts have been fixed.
- If any apps have been cancelled or are escalated, Sarah will request that ACS fix these accounts ASAP

ACS sends LVC response and app is not yet disbursed...
- Change from NOT TO CONSOL to YES TO CONSOL
- Update LVC data
- Forward LVC to Records with special note of "Image only – Do not process"
- Notate account using ACSC.

ACS sends LVC response and app is already disbursed or cancelled...
- Must check account to see if borrower has expressed interest in including ACS loans in consolidation.

If ACS does NOT confirm that the account has been fixed, we will continue to include the borrower on the Monday report.

If borrower expressed interest...
- Change from NOT TO CONSOL to YES TO CONSOL
- Update LVC data for missed loan.
- Forward LVC to Records with special note of "Image only – Do not process"
- Notate account using ACSC.

If borrower did not express interest...
- Save returned LVC in ACS LAN folder
- Notate account using ACSNA

If borrower calls in at a later time, Customer Service will populate the DLRSP ARC. Krystal's team will re-instate the loans and we will retrigger a new LVC to ACS.

38.     ACS originally attempted to resolve the LVC issues by the end of June 2016, but ACS failed to meet the deadline, and Federal Student Aid imposed a deadline of November 30, 2016, for ACS to finally resolve the LVC issues.

39.     FedLoans was able to identify and track specific borrowers affected by ACS's failure to deliver timely or complete LVCs.  These borrowers were named in documents regularly sent to ACS.

40.     The PHEAA documents demonstrate that what occurred to Plaintiff has occurred to thousands of other borrowers, causing them to suffer substantial damages.

9

## **CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all borrowers of student loans whose Federal Direct Consolidation Loan Applications were denied, delayed, or had loans removed from a Federal Direct Consolidation Loan Application because ACS failed to return a timely or complete LVC (the "Class").

42. The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the Class. ACS once managed one of the largest portfolios of student loans.[5]

43. Common questions of law and fact exist to all members of the Class and predominate over any questions solely affecting individual members. Among the questions of law and fact common to the Class are:

(a) whether Defendants' conduct violated New York General Business Law § 349;

(b) whether Defendants breached their common law or statutory duty to plaintiff and other members of the Class;

(c) whether Defendants breached their contract with Plaintiff and the other members of the Class; and

(d) whether Defendants amortized and serviced student loans with legitimate systems that maintained accurate account balances and/or payoff amounts on a timely basis.

---

[5] https://www.washingtonpost.com/news/grade-point/wp/2016/11/22/acss-2-4-million-settlement-in-massachusetts-highlights-problems-in-student-loan-servicing/?utm_term=.17c9cadb047d.

44. Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and the other members of the Class sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf of Plaintiff and the Class against all Defendants)

47. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

48. Plaintiff and the other members of the Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

49. Defendants engaged in acts and practices in the State of New York that were deceptive or misleading in a material way, and that injured Plaintiff and the other members of the

Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

50. Defendants' deceptive acts include representing to borrowers that their loans may be repaid, and thus, consolidated with another lender at anytime; when in fact Defendants were unable to provide accurate account balances/payoff amounts to enable loan payoff or consolidation leaving borrowers trapped in their loans serviced by ACS and forced to make further payments to Defendants.

51. Plaintiff and the other members of the Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual, or, alternatively, statutory, damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

52. Plaintiff and the other members of the Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

53. Plaintiff and the other members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

## SECOND CLAIM FOR RELIEF

### (Negligence on behalf of Plaintiff and the Class against all Defendants)

54. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

55. ACS assumed, and therefore owed, a duty to Plaintiff and the other members of the Class to maintain accurate account balances and/or payoff amounts; be able to timely process payments, including, payoffs for consolidations; and provide reasonable, accurate and timely information concerning the loans it serviced.

56. ACS performed or failed to perform its responsibilities in a grossly inadequate and negligent manner.

57. Plaintiff and the other members of the Class have been damaged by ACS's negligence and gross negligence.

58. As a result of the negligent actions of their agent, ACS, Access Group and Access Funding are responsible via the legal principles of a vicarious liability and respondeat superior.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract on behalf of Plaintiff and the Class against all Defendants)

59. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

60. Defendants' contract with Plaintiff and the other members of the Class provides, in relevant part that (a) LVCs would, in accordance with federal regulation, be completed and returned within ten business days after the request to complete and return an LVC, for a loan the borrower seeking to consolidate with Direct Loans, is received by ACS; and (b) student loans will be amortized and serviced by legitimate systems that maintain accurate account balances and/or payoff amounts on a timely basis.

61. ACS breached its contract by, as alleged above, (i) failing to return timely or complete LVCs when borrowers submitted Federal Direct Consolidation Loan Applications; and (ii) employing a system that was unable to provide accurate account balances/payoff amounts to enable consolidation with Direct Loans.

62. As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class prays for judgment as follows:

(a) Certifying the proposed Class pursuant to Fed. R. Civ. P. 23;

(b) Designating Plaintiff as representative of the proposed Class and designating Plaintiff's counsel as Class counsel;

(c) Awarding Plaintiff and the other members of the Class compensatory and/or statutory damages for the wrongful acts alleged;

(d) Awarding Plaintiff and the other members of the Class treble damages for Defendants' violations of GBL § 349;

(e) Enjoining Defendants from continuing the wrongful acts and practices alleged;

(f) Awarding Plaintiff and the other members of the Class the costs of the suit and attorneys' fees;

(g) Awarding Plaintiff and the other members of the Class pre and post judgment interest at the maximum legal rate; and

(h) Awarding Plaintiff and the other members of the Class such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

Dated: January 17, 2018

                                                 **MOORE KUEHN, PLLC**

                                                 */s/Justin Kuehn*
                                                 Justin A. Kuehn (B.N.: 519105)
                                                 30 Wall Street, 8th floor
                                                 New York, New York 10005
                                                 Tel: (212) 709-8245
                                                 jkuehn@moorekuehn.com
                                                             -and-
                                                 Lawrence P. Eagel (B.N.: 509836)
                                                 **BRAGAR EAGEL & SQUIRE, P.C.**
                                                 885 Third Avenue, Suite 3040
                                                 New York, New York 10022
                                                 Tel: (212) 308-5858
                                                 eagel@bespc.com

                                                 *Attorneys for Plaintiff and the Class*