# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY CHERY, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>CONDUENT EDUCATION SERVICES, LLC, *f/k/a ACS*, ACCESS GROUP, INC., and ACCESS FUNDING 2015-1, LLC,<br><br>                    Defendants. | Civ. No. 1:18-cv-75 (DNH/CFH)<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Chery ("Plaintiff"), by his undersigned counsel, on behalf of himself and all other similarly situated, complaining of defendants Conduent Education Services, LLC, *f/k/a* ACS ("ACS"), Access Group, Inc. ("Access Group"), and Access Funding 2015-1, LLC ("Access Funding") (ACS, Access Group, and Access Funding, are, collectively, "Defendants"), alleges based upon information and belief and documents received in response to a Pennsylvania Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq.,* request, as follows:

## PRELIMINARY STATEMENT

1.      This is a class action against Defendants for violations of New York General Business Law § 349, breach of contract, breach of implied covenant of good faith, declaratory judgment, negligence, and, alternatively, unjust enrichment.

2.      An FFELP (defined below) student loan borrower has an absolute right to pay off his/her loan(s) at any time and without penalty.  The class consists of borrowers whose right to prepayment was thwarted because their Federal Direct Consolidation Loan Applications were

improperly and wrongfully denied, delayed, or had loans removed because ACS failed to return a timely or complete Loan Verification Certificate ("LVC").

3.     According to the Consumer Financial Protection Bureau ("CFPB"), the process to payoff existing FFELP student loans by consolidating into a Direct Consolidation Loan should take a total of 30 days.[1]  As part of the consolidation process, within ten business days, the holder of a student loan that receives a request must complete and return an LVC for a loan the borrower is seeking to consolidate into a Direct Loan (defined below). 34 C.F.R. 685.220(f)(1)(i).

4.     Notwithstanding this obligation, ACS had a pattern and long history of regularly preventing repayment by failing to return LVCs within the mandated time period.

5.     The Department of Education has cautioned that because servicers are not compensated for loans consolidated with a new servicer, there "could be a disincentive for servicers" to assist borrowers with this process.[2]  Consistent with this warning, as detailed below, ACS delayed in responding to the LVC request sent in regard to Plaintiff's Federal Direct Consolidation Loan Application for many months, denying Plaintiff his right to pay off his loans and costing Plaintiff nearly a year of qualifying payments toward the Public Service Loan Forgiveness Program ("PSLF").

6.     ACS's delay in processing Plaintiff's LVC was not unique to Plaintiff.  Documents produced in response to an RTKL request reveal that ACS's failure to deliver timely or complete LVCs was caused by systematic and internal issues at ACS, which harmed, thousands of similarly situated student loan borrowers.

7.     Notwithstanding the fact that ACS was aware of its internal issues, its resulting delays, and the damages ACS was causing, ACS failed to correct the problem in a timely manner,

_____

[1] http://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf at p. 32.
[2] http://www.gao.gov/assets/680/677159.pdf at p. 23.

or compensate borrowers who remained trapped in loans they were seeking to repay; and forced to incur added burdens, costs, and expenses associated with the delay.

8.      As the CFPB explained in a June 2017 report, when a servicer fails to certify loan balances in a timely manner, the Direct Consolidation Loan cannot be originated or loans that are eligible for consolidation are left out of the Direct Consolidation Loan.  These "servicing errors" harm borrowers by "prevent[ing] borrowers from making qualifying payments, and ultimately add years and potentially thousands of dollars to repayment."[3]  Notably, as early as June 2015, Federal Student Aid ("FSA"), an office of the Department of Education, was aware of the "situation with ACS/Xerox," but according to a document titled "Liaison Report – Issues Affecting Organization (All Statuses)," "FSA has no power to force ACS to do anything since they do not have a contract with ACS."

9.      Plaintiff's claims against ACS are typical of members of the Class and are best asserted and resolved on a class-wide basis.  Absent a Class action, individual borrowers will not have the platform or resources necessary to compel ACS to compensate them for the damages ACS caused.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion,

---

[3] http://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf at p. 32.

sale, and marketing of their services in this District.  Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

12.     Plaintiff Jeffrey Chery had nine FFELP student loan accounts that were serviced by ACS from in or around April 2012 until December 2016 (the "Loans").  At the time this action was commenced, Plaintiff resided in the Commonwealth of Virginia.  Plaintiff currently resides in New York, New York.  Plaintiff resided in Queens, New York when the Loans were originated. Plaintiff's address for communications with ACS was at all relevant times, and remains, his family's address in Queens, New York.

13.     Defendant ACS is a Delaware limited liability company.  ACS is registered to do business in the State of New York.  The ACS office responsible for student loan servicing operations and correspondence with Plaintiff is located in Utica, New York.  On January 1, 2017, ACS Education Services became part of Conduent Business Services, LLC.  As a subsidiary of Conduent Business Services, ACS became Conduent Education Services, LLC.

14.     Defendant Access Group is a Delaware corporation.  Access Group is registered to do business in the State of New York.  Access Group was the owner of seven of the Loans.

15.     Defendant Access Funding is a Delaware limited liability company. Access Funding was the owner of two of the Loans.

## RELEVANT NON-PARTIES

16.     FedLoan Servicing ("FedLoan") is a department of the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which services student loans under the William D. Ford Federal Direct Loan Program ("Direct Loans").  Since 2012, FedLoan has been the servicer

for PSLF, a program that provides the opportunity for borrowers to obtain forgiveness of their student loan debt if certain conditions are satisfied.

17.    FedLoan is one of four servicers of consolidation loans under the Direct Loan program ("Direct Consolidation Loans").  The other servicers of Direct Consolidation Loans are Great Lakes Loan Services, Inc. ("Great Lakes"), Nelnet, and Navient.

18.    FedLoan/PHEAA, Great Lakes, Nelnet, and Navient are referred to, collectively, as the "Direct Loan Servicers."

## BACKGROUND

19.    Under the Federal Family Education Loan Program ("FFELP"), private lenders made federal student loans to students, and guaranty agencies insured these funds, which were, in turn, reinsured by the federal government.

20.    As a result of the Health Care and Education Reconciliation Act of 2010, FFELP was replaced with the Direct Loan Program.  Accordingly, no new FFELP loans were originated after July 1, 2010.

21.    Under the Direct Loan Program, federal student loans are made directly from the U.S. Department of Education to students.

22.    A borrower with FFELP loans must consolidate his/her loans with a Direct Consolidation Loan to receive the benefits of certain student loan repayment programs, including, but not limited to, PSLF.

23.    Under PSLF, Direct Loans are forgiven after a borrower, who works in full-time public service employment, makes 120 separate (not necessarily consecutive), on-time, monthly payments beginning any time after October 1, 2007.

## STATEMENT OF FACTS

24.     In accordance with the terms of the applicable master promissory notes ("MPN"), Defendants provided Plaintiff with a form disclosure statement for each of the Loans, "identifying the amount of the loan and additional terms of the loan" ("Disclosure Statements").[4]  Copies of relevant portions of the Disclosure Statements for the Loans are attached as Exhibit A.

25.     Each Disclosure Statement was sent by ACS, contains the ACS logo, and identifies Access Group as the "Lender."  All of the Disclosure Statements provide:

> (a)

> This document incorporates the repayment obligation(s) under original Promissory Notes(s) pertaining to the loans listed below. Your obligation is subject to the terms and conditions of such Promissory Note(s), each of which is still in effect in accordance with its terms.

> (b)

> This repayment obligation will be interpreted according to Federal Law (20 USC 1071 to 1087-4) and Regulations (34CFR 682), applicable state law and regulations governing the Federal Family Education Loan Program and the terms of the Promissory Note(s) which you have signed.

> (c)

> Consolidation or refinancing options may be available for STAFFORD, SLS Program, Plus Program, Perkins Loan Program, Health Profession Student Loan Program, and other educational loan programs. For further information, you should visit Direct Loan Consolidations at http://www.loanconsolidation.ed.gov regarding a consolidation loan with a repayment term between 10 and 30 years depending on your principal balance.

---

[4] Sample master promissory notes for each of these loan types are publicly available. *See, e.g.*, FFELP, *Federal Stafford Loan Master Promissory Note*, https://ifap.ed.gov/dpcletters/attachments/FP0608StaffApp2008.pdf; FFELP, *Federal PLUS Loan Master Promissory Note*, https://ifap.ed.gov/dpcletters/attachments/FP0904PLUSHEOAExp083110.doc; FFELP, *Federal Consolidation Loan Master Promissory Note*, https://ifap.ed.gov/dpcletters/attachments/FP0705AttBCORRECTEDAppPNoteCustom.pdf.

26.     Each MPN provides:

(a)

I [borrower] may prepay all or any part of the unpaid balance on my loan[s] at any time without penalty.

(b)

The terms of this [MPN] will be interpreted in accordance with the [Act (defined below)/applicable federal statutes and regulations]…

(c)

[A loan/loans] disbursed under this [MPN is/are) subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the "Act").

27.     ACS reaffirmed a borrower's right to prepay his/her loans in the form language contained in billing statements, which provides, "You may prepay all or a portion of your loan(s) any time without penalty."

28.     On or about February 4, 2016, Plaintiff submitted a Direct Consolidation Loan Application.  Plaintiff sought to consolidate the Loans to make qualifying PSLF payments. Because Plaintiff was consolidating to participate in PSLF, his application was submitted to FedLoan.

29.     Upon receipt of Plaintiff's application, FedLoan sent an LVC to ACS to be completed by ACS.

30.     ACS was required to complete the LVC and return it to FedLoan within ten business days of having received it.

31.     On or about February 23, 2016, Plaintiff received an email from FedLoan notifying him that his consolidation application was denied through no fault of his own.  Upon receiving this news, Plaintiff called FedLoan, and was informed that his application was denied

because ACS was required, but failed, to submit an LVC certifying the balances for each of the Loans.  FedLoan informed Plaintiff that FedLoan "always" experiences issues and delays with getting LVCs from ACS to certify loan balances.

32.     Also, on February 23, 2016, immediately after speaking with FedLoan, Plaintiff contacted ACS concerning the status of the LVC for his Loans.  On this call, ACS confirmed it had failed to complete the LVC within the required ten-day period and admitted the LVC was still not completed as of the date of the call.

33.     Two weeks later, Plaintiff called ACS again and was told that the LVC was still not ready.  In early April 2016, Plaintiff called ACS again, and was told that the LVC had the required information for eight of the nine Loans, but ACS was still working on the LVC information for one of the Loans.  Between April and June, Plaintiff called ACS at least three more times, and each time was told that ACS was still working on the one remaining Loan for the LVC, and that the LVC could not be sent to FedLoan until the last Loan's information was completed.

34.     Finally, in or around December 2016 – approximately ten months after Plaintiff applied to have the Loans consolidated – FedLoan received the LVC for the Loans and Plaintiff's consolidation application was finally approved.

35.     As a result of ACS's delay, Defendants were able to thwart payoff of the Loans for nearly ten months thereby continuing to profit.  In addition, Plaintiff lost up to ten qualifying payments toward PSLF, and paid approximately $1,056.66 without any corresponding credit toward PSLF.

36.     Documents produced by PHEAA, in response to a RTKL request show that ACS's failure to deliver timely or complete LVCs was a pervasive problem.  The documents also show that this problem was caused by a systematic flaw in ACS's servicing system.

37.     In a January 8, 2015 email, titled, "ACS No LVC Returned," Tony Divel, a Production Support Analyst at PHEAA/FedLoan, conceded, "that we were missing a lot of LVC's for ACS, specifically for the CNSLDN [consolidation] loan program."

38.      To advance consolidation applications, PHEAA would remove loans that ACS did not provide a timely or complete LVC for from the application.  If a borrower requested to add the previously removed ACS loans back to the application the borrower was told, "unable to add ACS loans due to loans removed from consol [sic] due to prior servicer did not provide a clear LVC that meets the eligibility.  Loan(s) must be removed in order to advance the app."

39.     In a May 14, 2015 email, Melissa Johnson, a Manager at FedLoan, recounted that on a phone call with "Shawn" (presumably this refers to Shawn Hughes at ACS), regarding "Pending Financial Verification (PFV)," (i) "[h]e did not know the number of accounts affected, but stated a large volume," (ii) that the issue, "is getting a lot of attention" but "[u]nfortunately, they [ACS] are not able to allocate as many resources to the accounts as he wishes they could," (iii) the ACS call center is receiving calls about the LVC issue, but the "script that they read to divert the calls from the borrower" is "vanilla," and  (iv) Great Lakes is having the same problem.

40.     A June 2, 2015 document titled "Liaison Report – Issues Affecting Organization (All Statuses)," provides that, Jamie Napralla at Great Lakes, reported an issue concerning "Loan Consolidation – ACS/Xerox not responding to LVC's."  This document also notes that "FSA" (Federal Student Aid) is aware of the "situation with ACS/Xerox," and that "FSA has no power to force ACS to do anything since they do not have a contract with ACS."

41.    As shown in the following chart created by PHEAA, at least as early as May 2015, PHEAA developed a formal procedure to attempt to deal the with problems caused by ACS's failure                    to                    deliver                    LVCs:



42.    ACS originally attempted to resolve the LVC issues by the end of June 2016, but ACS failed to meet the deadline.

43.    FedLoans was able to identify and track specific borrowers affected by ACS's failure to deliver timely or complete LVCs.  These borrowers were named in documents regularly sent to ACS.

44.    The PHEAA documents demonstrate that what occurred to Plaintiff has also occurred to thousands of other borrowers, causing them to suffer substantial damages.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all borrowers of student loans whose Federal Direct Consolidation Loan Applications were denied, delayed, or had loans removed from a Federal Direct Consolidation Loan Application because ACS failed to return a timely or complete LVC (the "Class").

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Although the exact number of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the Class.  ACS once managed one of the largest portfolios of student loans.[5]

47.     Common questions of law and fact exist to all members of the Class and predominate over any questions solely affecting individual members.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants' conduct violated New York General Business Law § 349;

(b)     whether Defendants breached their common law or statutory duty to plaintiff and other members of the Class;

(c)     whether Defendants breached their contract with Plaintiff and the other members of the Class;

(d)     whether Defendants breached the implied covenant of good faith and fair dealing;

(e)     whether Defendants conduct was negligent;

(f)     whether Defendants were unjustly enriched; and

---

[5] https://www.washingtonpost.com/news/grade-point/wp/2016/11/22/acss-2-4-million-settlement-in-massachusetts-highlights-problems-in-student-loan-servicing/?utm_term=.17c9cadb047d.

(g)     whether Defendants amortized and serviced student loans with legitimate systems that maintained accurate account balances and/or payoff amounts on a timely basis.

48.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and the other members of the Class sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to seek redress individually for the wrong done to them.  There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf of Plaintiff and the Class against all Defendants)

51.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

52.     Plaintiff and the other members of the Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

53.     Defendants engaged in acts and practices in the State of New York that were deceptive or misleading in a material way, and that injured Plaintiff and the other members of the Class.  Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

54.     Defendants' deceptive acts include representing to borrowers that their loans may be repaid, and thus, consolidated with another lender at anytime; when in fact Defendants were unable to provide accurate account balances/payoff amounts to enable loan payoff or consolidation leaving borrowers trapped in their loans serviced by ACS and forced to make further payments to Defendants.

55.     Plaintiff and the other members of the Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual, or, alternatively, statutory, damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

56.     Plaintiff and the other members of the Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

57.     Plaintiff and the other members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract on behalf of Plaintiff and the Class against all Defendants)

58.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

59.     Defendants' standard form contract with Plaintiff and the other members of the Class provides, in relevant part that:

      (a) a borrower may prepay all or any part of the unpaid balance on their loans at any time without penalty;

      (b) loans are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations; and

      (c) repayment obligation are interpreted according to Federal Law (20 USC 1071 to 1087-4) and Regulations (34CFR 682), applicable state law and regulations governing the Federal Family Education Loan Program and the terms of the MPN.

60.     Defendants breached their contract by, as alleged above, (i) thwarting prepayment by preventing borrowers from consolidating their loans with other lenders/servicers; and (ii) failing to return timely or complete LVCs when borrowers submitted Federal Direct Consolidation Loan Applications.

61.     As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing
on behalf of Plaintiff and the Class against all Defendants)**

62.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

63.     Defendants are in contract with Plaintiff and the other members of the Class concerning the servicing and repayment of student loans.

64.     Every contract imposes the duty of good faith and fair dealing upon the parties' performance.  Here that duty requires that Defendants amortize and service student loans by

employing legitimate systems that maintain accurate account balances and/or payoff amounts on a timely basis.

65.     Defendants acted in bad faith by employing a system that was unable to provide accurate account balances/payoff amounts to enable payoff/consolidation with Direct Loans.

66.     As a result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment on behalf of Plaintiff and the Class against all Defendants)

67.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

68.     An actual controversy exists as to whether Defendants' failure to return timely or complete LVCs violates Plaintiff and the Class's right to prepay all or any part of the unpaid balance on their loans at any time and without penalty.

69.     Plaintiff and the Class are entitled to declaratory judgment that they may at any time and without penalty prepay their loans through consolidation with another lender/servicer.

## FIFTH CLAIM FOR RELIEF

### (Negligence on behalf of Plaintiff and the Class against all Defendants)

70.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

71.     ACS assumed, and therefore owed, a duty to Plaintiff and the other members of the Class to maintain accurate account balances and/or payoff amounts; be able to timely process payments, including, payoffs for consolidations; and provide reasonable, accurate and timely information concerning the loans it serviced.

15

72.     ACS further assumed, and therefore owed, a duty to correct the systematic and internal issues that prevented it from delivering timely or complete LVCs.

73.     ACS breached its foregoing duties to Plaintiff and other members of the Class by performing its responsibilities in a grossly inadequate and negligent manner.

74.     As a proximate cause of ACS's negligence and/or gross negligence, Plaintiff and the other members of the Class have been damaged.

75.     As a result of the negligent actions of their agent, ACS, Access Group and Access Funding are responsible via the legal principles of a vicarious liability and respondeat superior.

### SIXTH CLAIM FOR RELIEF

### (Alternatively, Unjust Enrichment on behalf of Plaintiff and the Class against all Defendants)

76.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

77.     As detailed above, Plaintiff and the other members of the Class have conferred a benefit upon Defendants, specifically the principal, interest, and fees Defendants earns from servicing/owning Plaintiff and the other members of the Class's student loans to which it would not otherwise have been entitled.

78.     Defendants' retention of the money they received by thwarting payoff of student loans and thereby continuing to profit is an unjust enrichment and violates equity and good conscience.

79.     As a result of Defendants' unjust enrichment, Plaintiff and the Class have been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class prays for judgment as follows:

(a)     Certifying the proposed Class pursuant to Fed. R. Civ. P. 23;

(b)     Designating Plaintiff as representative of the proposed Class and designating Plaintiff's counsel as Class counsel;

(c)     Awarding Plaintiff and the other members of the Class compensatory and/or statutory damages for the wrongful acts alleged;

(d)     Awarding Plaintiff and the other members of the Class treble damages for Defendants' violations of GBL § 349;

(e)     Awarding Plaintiff and the other members of the Class the declaratory relief sought;

(f)     Enjoining Defendants from continuing the wrongful acts and practices alleged;

(g)     Awarding Plaintiff and the other members of the Class the costs of the suit and attorneys' fees;

(h)     Awarding Plaintiff and the other members of the Class pre and post-judgment interest at the maximum legal rate; and

(i)     Awarding Plaintiff and the other members of the Class such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: April 10, 2018

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn (B.N.: 519105)
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
        -and-
Lawrence P. Eagel (B.N.: 509836)
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue, Suite 3040
New York, New York 10022

17

Tel: (212) 308-5858
eagel@bespc.com

*Attorneys for Plaintiff and the Class*