UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

JEFFREY CHERY, on
behalf of himself and all
others similarly situated,

                Plaintiff,

    -v-                                    1:18-CV-75

CONDUENT EDUCATION
SERVICES, LLC, formerly
known as ACS, ACCESS
GROUP, INC., and ACCESS
FUNDING 2015-1, LLC,

                Defendants.

--------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MOORE KUEHN, PLLC<br>Attorneys for Plaintiff<br>30 Wall Street, 8th Floor<br>New York, NY 10005 | JUSTIN A. KUEHN, ESQ. |
| BRAGAR EAGEL & SQUIRE, P.C.<br>Attorneys for Plaintiff<br>885 Third Avenue, Suite 3040<br>New York, NY 10022 | LAWRENCE P. EAGEL, ESQ |
| BALLARD, SPAHR LAW FIRM<br>Attorneys for Defendants<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103 | JOHN GRUGAN, ESQ.<br>ELEANOR HUYETT, ESQ.<br>ELIZABETH<br>    SEIDLIN-BERNSTEIN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On January 18, 2018, plaintiff Jeffrey Chery ("Chery" or "plaintiff") instituted this putative class action against defendants Conduent Education Services, LLC, formerly known as ACS ("ACS"), Access Group, Inc. ("Access Group"), and Access Funding 2015-1, LLC ("Access Funding") (collectively "defendants"), student loan holders and their servicer, for interfering with his ability to consolidate his loans in accordance with a federal loan program.

Chery's amended complaint alleges six claims: (1) a violation of New York General Business Law § 349; (2) a breach of contract; (3) a breach of the implied covenant of good faith and fair dealing; (4) a request for declaratory judgment; (5) negligence; and (6) unjust enrichment.

On April 24, 2018, defendants moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Chery's complaint. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from Chery's amended class action complaint and its attached exhibit, Dkt. No. 19, and are assumed true for the purpose of resolving defendants' motion to dismiss.

Chery is a Virginia resident who took out nine student loans (the "loans") through the Federal Family Education Loan Program ("FFELP"), while he lived in Queens, New York. Compl. ¶ 12. ACS, a Delaware company that maintains an office in Utica, New York, initially serviced plaintiff's loans. Id. ¶¶ 12-13. Access Group, a Delaware corporation

registered to do business in New York, owned seven of plaintiff's Loans, and Access Funding, another Delaware Company, owned the other two. Id. ¶¶ 14-15.

Each of Chery's loans is governed by a Master Promissory Note ("MPN"), which included certain form disclosure statements (the "Disclosure Statements") (collectively the "contracts") that "identi[ied] the amount of the loan and additional terms of the loan." Compl. ¶ 24.

The Disclosure Statements received by Chery for each of the loans was sent by ACS, contained the ACS logo, and identified Access Group as the lender. Compl. ¶ 25. In pertinent part, these Disclosure Statements provided that:

> (a) This document incorporates the repayment obligation(s) under original Promissory Notes(s) pertaining to the loans listed below. Your obligation is subject to the terms and conditions of such Promissory Note(s), each of which is still in effect in accordance with its terms.
>
> (b) This repayment obligation will be interpreted according to Federal Law (20 USC 1071 to 1087-4) and Regulations (34CFR 682), applicable state law and regulations governing the Federal Family Education Loan Program and the terms of the Promissory Note(s) which you have signed.
>
> (c) Consolidation or refinancing options may be available for STAFFORD, SLS Program, Plus Program, Perkins Loan Program, Health Profession Student Loan Program, and other educational loan programs. For further information, you should visit Direct Loan Consolidations at http://www.loanconsolidation.ed.gov regarding a consolidation loan with a repayment term between 10 and 30 years depending on your principal balance.

Id. ¶ 25 (paragraph breaks omitted). Further, each MPN established, in pertinent part:

> (a) I [borrower] may prepay all or any part of the unpaid balance on my loan[s] at anytime without penalty.

> (b) The terms of this [MPN] will be interpreted in accordance with the [Act (defined below)/applicable federal statutes and regulations] . . .
>
> (c) [A loan/loans] disbursed under this [MPN is/are] subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the "Act").

Id. ¶ 26 (alterations in original) (paragraph breaks omitted). Finally, each billing statement received by plaintiff from ACS in connection with the loans stated that "You may prepay all or a portion of your loan(s) any time without penalty." Id. ¶ 27.

On February 4, 2016, Chery submitted a Federal Direct Consolidation Loan Application (the "Application") to FedLoan Servicing ("FedLoan"), an entity that services federal loans for the Public Service Loan Forgiveness Program ("PSLF"). Compl. ¶¶ 16, 28.

As plaintiff explains, PSLF is "a program that provides the opportunity for borrowers to obtain forgiveness of their student loan debt if certain conditions are satisfied." Compl. ¶ 16. Under PSLF, a borrower who has been accepted to the program may have their debt forgiven after making 120 separate on-time, monthly loan payments while employed full-time in a qualifying public service job. Id. ¶ 23.

FedLoan received Chery's Application and, in turn, sent a Loan Verification Certificate ("LVC") to ACS, a document which in essence required ACS to certify the balance of each of plaintiff's loans for purposes of consolidation and transfer to FedLoan, the new servicer. Compl. ¶ 29, 31. Importantly, applicable federal regulations required ACS to "complete the LVC and return it to FedLoan within ten business days of having received it." Id. ¶¶ 3, 30; see also 34 C.F.R. 685.220(f)(1)(i).

- 4 -

However, on February 23, 2016, FedLoan e-mailed Chery to notify him that his Application had been denied "through no fault of his own." Compl. ¶ 31. Plaintiff called FedLoan, where a representative explained that the denial resulted from ACS's failure to return a completed LVC in the required ten-day time frame. Id. According to plaintiff, the representative told him that FedLoan "always experiences issues and delays with getting LVCs from ACS to certify loan balances." Id.

After he hung up with FedLoan, Chery called ACS, who "confirmed it had failed to complete the LVC within the required ten-day period and admitted the LVC was still not completed as of the date of the call." Compl. ¶ 32. Plaintiff followed up with ACS two weeks later and was told the same thing. Id. ¶ 33.

In April 2016, Chery called ACS again, and was again told that ACS was "still working" on the LVC information for some of his loans. Compl. ¶ 33. Between April and June, plaintiff called ACS "at least three more times," and was told each time that ACS was "still working" on the LVC for his loans. Id. Notably, the LVC could not be sent to FedLoan until it was fully completed. Id.

Finally, in December 2016, approximately ten months after Chery applied to FedLoan to consolidate his loans for the PSLF payment program, FedLoan received the LVC from ACS and approved plaintiff's application. Compl. ¶ 34. According to plaintiff, he lost up to ten qualifying PSLF payments as a result of ACS's delay. Id. ¶ 35.

Chery alleges that certain documents produced by ACS in response to an information request he made revealed that ACS's failure to deliver timely or complete LVCs "was a pervasive problem." Compl. ¶ 36. According to plaintiff, these documents show that ACS's failure to return the LVCs in the mandated time period "was caused by a systemic flaw in

ACS's servicing system." id. ¶ 36, that harmed "thousands of similarly situated student loan borrowers," id. ¶ 6.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.

In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

Furthermore, in reviewing a motion to dismiss, a court (1) accepts "as true all of the allegations contained in [the] complaint," except for "legal conclusions," (2) makes "all reasonable inferences in favor of the non-moving party," and (3) draws "on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

## IV. DISCUSSION[1]

As a threshold matter, defendants contend Chery's entire complaint must be dismissed because "his clams [*sic*] are premised on [ACS's] alleged breach of its duties" under the Higher Education Act of 1965 ("HEA"), a statute that does not provide for a private

---

[1] Defendants do not parse out the extent of Chery's claims against the Access defendants. Instead, defendants argue near the very end of their dismissal motion that plaintiff's claims against those two defendants "fail along with those against [ACS]." Plaintiff responds that the Access defendants are responsible for ACS's alleged misconduct. Accordingly, this opinion focuses on ACS's alleged misconduct.

cause of action. Defs.' Reply at 5.[2]  In the alternative, defendants argue plaintiff cannot identify any "actionable damages" flowing from the conduct about which he complains. Id. at 9.  Beyond these two arguments in support of complete dismissal of plaintiff's complaint, defendants advance a series reasons why each of plaintiff's individual claims must be dismissed.

### A. The Higher Education Act of 1965

Defendants argue Chery's claims "are entirely premised on [ACS's] alleged delay in processing his LVC within the ten-business-day return period specified by the HEA and its corresponding regulations."  Defs.' Mem. at 12.  Plaintiff responds that "it is irrelevant here whether there is or is not a private cause of action under HEA because the Complaint does not bring a claim under the HEA."  Pl.'s Opp'n at 14.  According to plaintiff, his claims involve the alleged breach of certain promises made in the contracts, which simply incorporate language required by the HEA.  Id. at 14-15.

As a general matter, "the HEA does not provide student borrowers a private right of action to enforce its provisions."  Sanon v. Dep't of Higher Educ., 453 F. App'x 28, 30 (2d Cir. 2011) (summary order); see also Konashenko v. Duncan, 2016 WL 4543793, at *5 (E.D.N.Y. July 20, 2016) (collecting cases).  However, "[t]he absence of a private right of action under federal law provides no reason to dismiss a state law claim just because the claim refers to or incorporates some element of the federal law."  Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 654 (7th Cir. 2015).

---

[2] Pagination corresponds to CM/ECF.

In other words, "Congress's decision not to supply a remedy under federal law does not *necessarily* mean that it also intended to displace state law remedies." Bible, 799 F.3d at 654 (emphasis added). If anything, "the availability of a state law claim is even *more* important in an area where no federal private right of actions exists." Coll. Loan Corp. v. SLM Corp., 396 F.3d 588, 598 (4th Cir. 2005) (emphasis in original).

"Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 30 (2d Cir. 1997) (citation omitted); see also Chiacchia v. Nat'l Westminster Bank, 507 N.Y.S.2d 888, 889-890 (N.Y. App. Div. 1986) (discussing doctrine of incorporation by reference under New York law).[3]

Upon review, this argument does not provide a basis for dismissal. Chery argues that his complaint is not premised on the HEA but rather arises from defendants' alleged breach of the contracts, documents that happen to incorporate certain provisions required by the HEA.

Other courts in this Circuit have permitted breach of contract-based claims to go forward where, as here, the contract involves some aspect of a servicer's obligations under a federal student loan. See, e.g., Reynolds v. Xerox Educ. Servs., Inc., 2014 WL 4437622 (N.D.N.Y. Sept. 9, 2014) (Kahn, J.) (denying motion to dismiss based on misapplied payments); Breitman v. Xerox Educ. Servs., LLC, 2013 WL 5420532 (Sept. 27, 2013)

---

[3] The parties are here on diversity jurisdiction. 28 U.S.C. § 1332(a)(1). The parties assert that New York law applies and the Court agrees. Cf. Lantheus Med. Imaging, Inc. v. Zurich A. Ins. Co., 255 F. Supp. 3d 443, 452 n.9 (S.D.N.Y. 2015) (applying forum law where "neither party assert[ed] that there [was] a meaningful difference between the two jurisdictions' laws with respect to the instant dispute" and collecting cases approving of this approach).

(substantially same); Genna v. Sallie Mae, Inc., 2012 WL 1339482, at *9 (S.D.N.Y. Apr. 17, 2012) (rejecting third-party loan servicer's assertion that the plaintiff's state law claims were preempted by the HEA). Accordingly, defendants' first argument is rejected.

**B. Damages**

Defendants next argue that Chery has not identified any actionable damages flowing from ACS's delay in processing his LVC. Defs.' Mem. at 16. According to defendants, plaintiff's claim for damages is based upon "his speculative eventual qualification for forgiveness under the PSLF Program." Id. at 17. Plaintiff responds that this misses the point: even putting aside the issue of PSLF eligibility, defendants' delay caused plaintiff to pay over $1,000 that, if they had otherwise complied with the contract, would have gone to another servicer (in this case, FedLoan). Pl.'s Opp'n at 19.

"Generally speaking, the doctrine of standing 'requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction.'" New York by Schneiderman v. Utica City Sch. Dist., 177 F. Supp. 3d 739, 746–47 (N.D.N.Y. 2016) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

To establish Article III standing, "a plaintiff must show (1) that it 'suffered an injury in fact,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Upstate Citizens for Equality, Inc. v. United States, 841 F.3d 556, 565 (2d Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

In particular, defendants contend Chery cannot establish an injury-in-fact, a requirement that is satisfied where a plaintiff has suffered an "invasion of a legally protected

interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotations and citations omitted).

However, Chery's complaint alleges injuries that have personally affected him and that have already occurred. For instance, as a result of ACS's delay in returning the completed LVC, plaintiff paid $1,056.66 to ACS that he otherwise would have paid to FedLoan (and likely would have also received credit toward the PSLF program). As plaintiff explains, defendants' delay impaired his right under the contracts to "prepay all or any part of the unpaid balance on [his] loan[s] at anytime." Accordingly, this argument is rejected.

### C. General Business Law § 349

Defendants contend Chery's § 349 claim must be dismissed because it is "expressly preempted by the HEA." Defs.' Mem. at 19. Plaintiff responds that affirmative misconduct, like the deceptive loan servicing behavior alleged in this case, is not preempted by the HEA. Pl.'s Opp'n at 20.

Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). "General Business Law § 349 prohibits deceptive and misleading business practices and its scope is broad indeed." Wilner v. Allstate Inc. Co., 893 N.Y.S.2d 208 (N.Y. App. Div. 2d Dep't 2010). To state a § 349 claim, a plaintiff must allege: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

Defendants contend that Chery cannot establish the second element of this claim because the conduct at issue is governed by the HEA, which preempts certain state law

disclosure requirements. Plaintiff again responds that this case is about affirmative misconduct, not the effect of representations governed by federal law.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." Arizona v. United States, 567 U.S. 387, 398 (2012). "From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes." Id.

The Supremacy Clause thus dictates that federal law "shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. "Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 103 (2d Cir. 2010) (citation and internal quotation marks omitted).

"In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." Town of Clarkstown, 612 F.3d at 103 (citation and internal quotation marks omitted).

As relevant here, § 1098g provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g; see also §§ 1078(d), 1091a(a)(2)(b), 1091a)(b)(1)–(3), 1095a(a). "Congress, these sections clarify, intended the HEA to preempt state usury laws, statutes of limitations, limitations on recovering the costs of

debt collection, contractual infancy defenses, wage garnishment limitations, and disclosure requirements." Genna, 2012 WL 1339482, at *8.

Chery seeks to establish the second element of his § 349(h) claim by alleging that defendants acted in a materially misleading way; that is, "representing to borrowers that their loans may be repaid, and thus, consolidated with another lender at anytime; when in fact Defendants were unable to provide accurate account balances/payoff amounts to enable loan payoff or consolidation leaving borrowers trapped in their loans serviced by ACS and forced to make further payments to Defendants." Compl. ¶ 54. Defendants contend that this theory of relief would impermissibly "require [ACS] to reveal facts or information not [required] by federal law." Defs.' Reply at 10. Defendants argue this is an "improper-disclosure" claim, which is precisely the kind of claim preempted by the HEA. Id.

The principal authority offered by defendants in support of this proposition is Chae v. SLM Corp., 593 F.3d 936 (9th Cir. 2010), a Ninth Circuit case in which the plaintiffs, student borrowers, sued their loan servicer for violations of, inter alia, California's Unfair Competition Law and its Consumer Legal Remedies Act, a pair of statutes similar in effect to New York's § 349.

In Chae, the plaintiff-borrowers alleged the defendant-servicer employed "unfair" and "fraudulent" business practices "by using billing statements and coupon books that trick borrowers into thinking that interest is being calculated via the installment method when [the defendant-servicer] really uses a simple daily calculation." 593 F.3d at 942. The plaintiff-borrowers further alleged the defendant-servicer's "standardized loan applications" misrepresented the rights, remedies, and obligations conferred by their loans. Id.

The Ninth Circuit affirmed the district court's dismissal of these claims as preempted by § 1098g because:

> [a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims. The plaintiffs do not contend that California law prevents [defendants] from employing any of the three loan-servicing practices at issue. We consider these allegations in substance to be a challenge to the allegedly-misleading method [defendants] used to communicate with the plaintiffs about its practices. In this context, the state-law prohibition on misrepresenting a business practice is merely the converse of a state-law requirement that alternate disclosures be made.

Chae, 593 F.3d at 942 (citation and internal quotation marks omitted).

Whatever the merit of this logic, it does not apply to Chery's claims. Plaintiff's § 349 claim is not premised on a theory that certain disclosures mandated by federal law had a misleading effect on him as a borrower. Genna, 2012 WL 1339482, at *8 (explaining that in Chae "the plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law").

Rather, Chery alleges defendants engaged in a deceptive practice; i.e., defendants knew full well that their servicing system could not handle repayment requests made by borrowers in accordance with the provisions of their loan contracts (including those provisions incorporated by reference) and that defendants concealed this fact from borrowers to their detriment. Defendants have failed to establish that this allegedly deceptive practice was either "authorized by the Secretary of Education" or "conformed to any explicit dictates of federal law." Genna, 2012 WL 1339482, at *8. Accordingly, defendants' motion to dismiss plaintiff's § 349 claim will be denied.

### D. Breach of Contract

Defendants argue Chery's breach of contract claim must be dismissed because he failed to allege any breach of the loan agreements. Further, defendants argue they have no contractual relationship with plaintiff. Defs.' Mem. 22-23. Plaintiff responds that defendants breached the contracts by failing to honor his right to prepayment of the loans, a guarantee expressly made in the relevant documents. As to the question of a contractual relationship, plaintiff argues that at best this is a factual dispute that cannot be determined on a motion to dismiss.

"Under New York state law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).

Upon review, neither of defendants' argument justify dismissal. Chery alleges that defendants provided him with a standard form contract on ACS letterhead that incorporated the MPNs and the Disclosure Statements. Plaintiff further alleges that defendants breached the terms of those agreements because they failed to permit him to prepay the loans in accordance with the terms of those agreements.

Whether defendants failed to perform these contractual duties, and whether defendants are in privity with Chery, are fact-specific questions that would be inappropriate to resolve on a motion to dismiss. See, e.g., Harte v. Ocwin Fin. Corp., 2014 WL 4677120, at *5 (E.D.N.Y. Sept. 19, 2014) (discussing possible applicability of "functional privity" doctrine). As plaintiff's complaint alleges, he dealt directly with ACS and its representatives

when making payments and when attempting to have his LVC issue resolved. Accordingly, defendants' motion to dismiss plaintiff's breach of contract claim will be denied.

### E. Good Faith and Fair Dealing

Defendants contend that Chery's claim for breach of the implied covenant of good faith and fair dealing fails because it is duplicative of his claim alleging a breach of the express contract. Plaintiff responds that the failure of ACS's servicing systems is "distinct misconduct" from defendants' failure to live up to its explicit contractual promises.

New York contract law "recognizes as implicit in every contract a covenant of good faith and fair dealing in the course of contract performance." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (citation and internal quotation marks omitted). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 298-99 (S.D.N.Y. 2012) (citation omitted).

At this early stage, Chery has sufficiently alleged distinct misconduct to survive dismissal of this claim. As plaintiff points out, defendants deprived plaintiff of the "fruits" of his bargain—plaintiff had the contractual right to pay off his loan at any time, but was prevented from doing so for many months. Plaintiff alleges this was the result of bad faith attributable to defendants because, among other things, they knowingly chose to continue employing "a system that was unable to provide accurate account balances/payoff amounts." Compl. at ¶ 65. Accordingly, defendants' motion to dismiss plaintiff's implied covenant claim will be denied.

### F. Declaratory Judgment

Defendants contend Chery's claim for declaratory relief fails because it is duplicative of his breach of contract claim and, in any event, there is no longer any "actual controversy" between the parties. Defs.' Mem. at 25. Plaintiff responds that his claim for declaratory judgment relates to the question of prepayment through consolidation, while his breach of contract claim concerns prepayment more generally. Further, plaintiff argues that even if his controversy with defendants is resolved, he still has standing as a class representative.

"To bring an action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between [the] parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 729 F. App'x 33, 40 (2d Cir. 2018) (summary order) (quoting Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993).

However, "[c]ourts do not entertain declaratory judgment actions to assuage a party's concerns about potential contractual obligation or liability." Chelsea Grand, LLC, 729 F. App'x at 40. Accordingly, the dispute "must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Id. (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952)).

Whether or not Chery retains individual standing as to this declaratory judgment claim, he still has standing as a prospective class representative. A plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the

putatively illegal conduct of the defendant," and (2) that such conduct "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]"  NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012) (citations omitted).  In other words, the named plaintiff in a putative class action "does not require individual standing to bring each class member's claim in order to establish class standing."  Hernandez v. Autozone, Inc., 323 F.R.D. 496, 501 (E.D.N.Y. 2018).

Chery has sufficiently alleged that he suffered an actual injury, and that the misconduct giving rise to this injury "implicates the same set of concerns" possessed by other members of the alleged class.  Accordingly, defendants' motion to dismiss plaintiff's claim for declaratory judgment will be denied.

### G. Negligence

Defendants contend Chery's negligence claim must be dismissed because he cannot identify any duty owed to him.  In the alternative, defendants argue that this claim is barred by New York's economic loss doctrine.  Plaintiff responds that a loan servicer's "active conduct" can create a duty of care that is owed to borrowers.

To establish a prima facie case of negligence under New York law, a plaintiff must show:  "(1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages substantially as a result of that breach."  Kloner v. United States, 196 F. Supp. 3d 375, 385 (E.D.N.Y. 2016).  Notably, however, "[i]t is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties."  Abraham v. Am. Home Mortg. Servicing, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013)  (collecting cases).

Upon review, this claim survives dismissal for now.  The conduct about which Chery complains is almost certainly covered by his breach of contract claims.  However, as plaintiff emphasizes, defendants contest plaintiff's claim that they are bound by the contracts at issue.  Pl.'s Opp'n at 29 ("If Defendants seek to preclude claims because the Contracts are supposedly not binding they must act reasonably.").  As relevant here, plaintiff alleges defendants acted unreasonably in accepting money from a "large volume" of loan borrowers, including him, without properly accounting for that money.  Kloner, 196 F. Supp. 3d at 386 (explaining how a defendant may owe an "assumed duty of care" where certain conditions are met).  Accordingly, defendants' motion to dismiss plaintiff's negligence claim will be denied.

### H. Unjust Enrichment

Defendants contend that Chery's claim for unjust enrichment must be dismissed because the parties' relationship is governed by an express contract.  Defs.' Mem. at 29.  Plaintiff responds that this claim is pleaded in the alternative to his breach of contract claim.  Plaintiff further argues that defendants "spend the vast majority of their moving papers claiming that Plaintiff cannot enforce the Contracts in this dispute, and then seek to dismiss Plaintiff's claims for unjust enrichment because there is a governing contract."  Pl.'s Opp'n at 29.

Chery's argument is well taken.  "The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff."  Digizip.com, Inc. v. Verizon Servs. Corp., 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015) (citation omitted).

As relevant here, a quasi-contract theory of recovery like unjust enrichment may survive a motion to dismiss where the parties dispute the existence of a valid contract governing the disputed conduct. Willman v. Zelman & Assocs., LLC, 2012 WL 811512, at *5 (S.D.N.Y. Mar. 12, 2012) ("[S]ince defendants deny that they had a contract, or owe damages, the Court is unwilling to toss out one claim when another theory might prove to be the more appropriate at a later stage as discovery proceeds[.]"). Accordingly, defendants' motion to dismiss this claim will be denied.

## V. CONCLUSION

Defendants' arguments require fact-bound inquiries suitable for disposition after discovery takes place.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is DENIED; and

2. Defendants shall file and serve an answer to the complaint on or before April 12, 2019.

IT IS SO ORDERED.

Dated: March 29, 2019
       Utica, New York.

_____
United States District Judge