**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

JEFFREY CHERY, on
behalf of himself and all
others similarly situated,

                          Plaintiff,

        v.

                                       No. 1:18-CV-75

CONDUENT EDUCATION                    (DNH/CFH)
SERVICES, LLC, et al.,

                          Defendants.

─────────────────────────────────

**APPEARANCES:**

Moore Kuehn, PLLC               JUSTIN A. KUEHN, ESQ.
30 Wall Street, 8th Floor
New York, New York 10005
Attorney for Plaintiff

Brager Eagel & Squire, P.C.      LAWRENCE P. EAGEL, ESQ.
885 Third Avenue, Suite 3040
New York, New York 10022
Attorney for Plaintiff

Ballard, Spahr Law Firm         JOHN GRUGEN, ESQ.
1735 Market Street, 51st Floor     DANIEL C. FANASELLE, ESQ.
Philadelphia, Pennsylvania 19103   ELIZABETH SEIDLIN-
Attorneys for defendants            BERNSTEIN, ESQ.
Conduent Education Services, LLC,
Access Group, Inc., and
Access Funding 2015-1, LLC

**DECISION & ORDER**

      Presently pending before the Court is plaintiff Jeffery Chery's ("plaintiff") motion

to compel defendants Conduent Education Services, LLC ("Conduent") (f/k/a "ACS");

Access Group, Inc. ("Access Group"); and Access Funding 2015-1, LLC ("Access Funding") (collectively, where appropriate, "defendants") to produce certain documents. See Dkt. No. 55. Defendants oppose plaintiff's motion and move for a protective order prohibiting plaintiff from obtaining the requested documents. See Dkt. No. 56. Plaintiff filed a reply. See Dkt. No. 57. For the reasons that follow, plaintiff's motion to compel is granted in part and denied in part and defendants' cross motion is denied.

## I. Background

## A. Plaintiff's Amended Complaint

For purposes of this motion, the undersigned will assume the parties' familiarity with the facts and provide only a brief summation of the factual and procedural background as relevant to the present motion.[1] Plaintiff is a Virginia resident who took out nine student loans through the Federal Family Education Loan Program ("FFELP"), while he lived in Queens, New York. See Dkt. No. 19 ("Amen. Compl.") at 4 ¶ 12. In January 2018, plaintiff commenced this diversity action by filing a class action lawsuit against defendants Access Group, a Delaware corporation registered to do business in New York, and Access Funding, a Delaware LLC, which were the owners of seven and two of plaintiff's student loans, respectively; and Conduent, a Delaware LLC registered to do business in New York, which was the servicer of plaintiff's student loan accounts from April 2012, until December 2016. See id. at ¶ 13-15. Plaintiff asserted claims for "violations of New York General Business Law § 349, breach of contract, breach of

---

[1]  A more thorough recitation of plaintiff's factual allegations and procedural history can be found in plaintiff's amended complaint and the Court's prior order denying defendants' motion to dismiss. See Dkt. Nos. 19, 38.

implied covenant of good faith, declaratory judgment, negligence, and, alternatively, unjust enrichment."  Amen. Compl. at 1 ¶ 1; see Dkt. No. 1.

Plaintiff alleged that, on February 4, 2016, he submitted a Direct Consolidation Loan Application to non-party FedLoan, a servicer of consolidated loans, in order to consolidate his nine student loans and to attempt to qualify for the Public Service Loan Forgiveness ("PSLF") program.  See Amen. Compl. at 7 ¶ 28.  Upon receipt of plaintiff's application, FedLoan sent a request for a Loan Verification Certificate ("LVC") to Conduent.  See id. at ¶ 29.  Plaintiff noted that, pursuant to 34 C.F.R. § 685.220(f)(1)(i), Conduent was required to provide a response within 10 business days of receipt of FedLoan's LVC request.  See id. at ¶ 4.  However, Conduent did not provide FedLoan with an LVC until December 2016, approximately 10 months after plaintiff filed his application.  See id. at 8 ¶ 34.  Plaintiff alleged that Conduent's delay caused him to miss out on "up to ten qualifying payments toward PSLF" and to pay "approximately $1,056.66 without any corresponding credit toward PSLF."  Id. at ¶ 35.  Following the Court's denial of defendants' motion to dismiss, see Dkt. Nos. 20, 38, defendants filed an answer in which they denied the allegations in plaintiff's amended complaint and raised various affirmative defenses.  See Dkt. No. 43.

**B. Plaintiff's Demands**

In July 2019, plaintiff submitted his first request for the production of documents to defendants.  See Dkt. No. 49-1.  As relevant here, plaintiff's requests included:

> 1.  All documents concerning your policies, procedures or
> systems, including but not limited to any studies or reports,
> for the processing, consideration, completion, approval,
> rejection, or response to any and all request for an LVC in

connection with Borrowers' efforts to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Loan.

2.  To the extent not included in Request No. 1, All documents concerning, evidencing or describing your policies, procedures or practices concerning your obligation to respond to a request for an LVC.

3.  All documents concerning any changes or modifications to the policies, procedures, practices or systems mentioned in Requests No. 1 and 2.

5.  All documents showing, summarizing, reporting on, calculating, or concerning the time you took to respond to a Borrower's request for a LVC in connection with the Borrower's efforts to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Laon, including any documents explaining or attempting to explain the reason for any delay.

7.  All documents, including but not limited to, studies, analyses, reports, complaints by Borrowers, or inquiries by any government agency, concerning LVC requests.

8.  All documents, including but not limited to, studies, analyses, reports, complaints by Borrowers, or inquiries by Direct Loan Servicers in connection with your Student Loan servicing.

9.  All documents concerning, describing or evidencing the Disclosure Statements you provided to Borrowers in connection with the Student Loans made to Borrowers for those Borrowers who sought to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation loan.

10.  All documents concerning, describing or evidencing the MPN you provided to Borrowers in connection with the Student Loans you made to Borrowers for those Borrowers who sought to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Loan.

11.  All documents concerning, evidencing or describing a Borrower's right to repay his/her FFELP Student Loans.

12.  All documents exchanged with any or all of the Direct Loan Servicers concerning Borrowers' attempts or efforts to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Loan.

15.  All documents concerning, relating to, referring to or evidencing litigation concerning a Borrower's efforts or attempts to obtain an LVC in connection with the Borrower's efforts to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Loan.

16.  All documents concerning, relating to, referring to, the "Consent Order" entered in the Administrative Proceeding by the Bureau of Consumer Financial Protection (Bureau) in the matter of Conduent Education Services, LLC, Administrative Proceeding File No. 2019-BCFP-0005, including without limitation, all documents produced to, or exchange with, the Bureau regarding the matter.

17.  All documents concerning, relating to, or referring to, the "NY Consent Order" entered in the Administrative Proceeding by the New York State Department of Financial Services in the matter of Investigation by MARIA T. VULLO, Superintendent of Financial Services, of CONDUENT EDUCATION SERVICES, LLC, f/k/a XEROX EDUCATION SERVICES, LLC, f/k/a and d/b/a ACS EDUCATION SERVICES, INC.

Id. at 5-8.  Defendants objected to each of the foregoing demands.  See Dkt. No. 49-2.

### C. Pre-Motion Briefing

In December 2019, plaintiff's counsel submitted a letter motion requesting a pre-motion conference, which stated that "[m]ore than two months ha[d] passed since [the parties met] on August 23, 2019 concerning [d]efendants' [r]esponses and [o]bjections to [p]laintiff's [r]equest for [p]roduction of [d]ocuments."  Dkt. No. 49-3 at 2.  Plaintiff requested that defendants produce the documents requested and offered several proposals for narrowing certain requests that defendants objected to as overbroad but

that they would consider if more narrowly tailored.  See id. at 2-5.  The undersigned

granted plaintiff's letter motion and scheduled a discovery hearing for December 19,

2019.  See Dkt. No. 50.

On December 12, 2019, defendant responded to plaintiff's letter motion.  See

Dkt. No. 53.  Defendants stated that, "from late 2014 to 2016, Conduent engaged in [a]

remediation of a population of loans at the direction of the U.S. Department of

Education . . . and the Consumer Financial Protection Bureau (the "CFPB")," which

resulted in "Conduent's processing of a population of LVCs [being] delayed" and that

"[p]laintiff's LVC was among those impacted by the remediation."  Id. at 1.[2]  Defendants

further posited that the CFPB "addressed [Conduent's] LVC delay" "[i]n its 2018

Consent Order" as did the New York State Department of Financial Services

("NYSDFS") in "the Consent Orders Conduent entered into with the New York Attorney

General's Office."  Id.  Further, defendants noted that plaintiff received restitution from

Conduent as a result of the Consent Order it entered into with the New York State

Attorney General, either made no payments pursuant to a forbearance or less than

standard payments on his loans pursuant to a plan he requested, and that plaintiff had

"since abandoned the opportunity to qualify for loan forgiveness under the [PSLF

p]rogram by taking a job as an attorney in a private law firm."  Id. at 2.  "In light of this

background," defendants argue, the following of plaintiff's discovery requests were

"inappropriate":

> (1) Conduent's policies, procedures, and records concerning
> LVC requests; (2) borrower requests and complaints
> received by Conduent related to attempts to pay off or

---

[2]  Defendants stated that they explained the remediation in their answer.  See Dkt. No. 53 at 2 ("As stated
in its Answer . . . Conduent engaged in the remediation . . . .").  However, the answer filed in this action
contains no mention of the remediation.  See generally Dkt. No. 43.

> consolidate their FFELP loans into Direct Loans, along with the associated documents; (3) correspondence with direct loan servicers concerning borrowers' efforts to pay off or convert their FFELP loans; and (4) the CFPB and DFS investigations and consent orders, including allegations of delays in providing LVCs.

Id. (internal quotation marks omitted).  Further, defendants argued that they had "fully answered and produced all relevant and discoverable materials in this action" and that the "information sought by [p]laintiff . . . ha[d] no relevance to his claims[] nor . . . any bearing on [his] ability to pursue this action on a class-wide basis" and/or "pertain[ed] to confidential and/or private information that is protected under federal law and not subject to discovery."  Id.

Moreover, defendants explained that, despite their objections to plaintiff's document production requests, "[d]efendants produced over 200 pages of documents pertaining to [p]laintiff, and disclosed that the processing of [p]laintiff's LVCs was caused by a remediation conducted by the [U.S. Department of Education] and the CFPB."  Id.  In addition, defendants explained that, at the parties' August 23, 2019 meeting, defendants "offered to supplement [their] responses by disclosing the number of individual borrowers affected by the remediation during the relevant time period, along with breakdowns of processing times; and . . . reiterated [their] objections to [p]laintiff's requests pertaining to documents containing private information of non-parties."  Id.  Defendants also restated their arguments in support of their objections and requested, as relevant here, that the Court "enter a protective order striking [p]laintiff's discovery requests . . . and prohibiting [p]laintiff from pursuing these requests from [d]efendants or any third party."  Id. at 8.  Following a pre-motion hearing on December 19, 2019, the undersigned granted plaintiff's request to file a motion to compel.  See

7

Text Minute Entry Dated December 19, 2019.  Plaintiff then filed the present motion on January 23, 2020.  See Dkt. No. 55.


## II. Legal Standard

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008)).


## III. Analysis

### A.  Request for Production Nos. 1, 2, and 3

Plaintiff first argues that he is entitled to documents pursuant to Request Nos. 1-3 because "[t]he requested documents are relevant to [his] claims to show whether [d]efendants' policies and procedures were adequate to meet their statutory obligations, to show whether [d]efendants complied with their own procedures," and "whether [d]efendants considered modifications to their procedures or other policies in order to meet the statutory obligation."  Dkt. No. 55-1 at 12.  Plaintiff states that, "[t]o date . . .

[d]efendants have produced just eleven pages of LVC Processing Guidelines," but "have not produced any emails or communications concerning their policies and procedures or any documents concerning any amendments to the policies or procedures-including modifications due to the . . . remediation." Id.  Plaintiff notes that the Conduent LVC Processing Guidelines disclosed by defendants are "seemingly dated from 2007." Id. at 10.  In addition, plaintiff states that defendants also produced "a 196[-]page spreadsheet purportedly identifying LVC requests for which [Conduent] was late in providing the LVC." Id.

Defendants oppose plaintiff's motion on the basis that, because no class has yet been certified, plaintiff's discovery is limited to only information that is necessary to brief whether Fed. R. Civ. P. 23 is satisfied. See id. at 6.  Concerning plaintiff's arguments advanced with respect to Request Nos. 1-3, defendants argue that "Conduent already produced all documents responsive to these requests" and that "[p]laintiff fails to explain . . . why any such emails or communications concerning Conduent's policies and procedures have any probative value where the relevant documents already have been produced" and that plaintiff does not "provide any basis for his assertion that the documents produced in response to these requests—which constitute all relevant and responsive documents in Conduent's possession—are insufficient." Dkt. No. 56 at 18 (internal quotation marks omitted).  In particular, defendants stated that they produced the following material on December 12, 2019:

> Conduent's policies and procedures for processing LVCs[;]
>
> Reports related to LVCs processed by Conduent, showing when delays occurred and when they did not; and

> A spreadsheet identifying the number of affected borrowers (and the number of loans associated with each), and detailing, for each loan, the: (1) dates each LVC request was received and responded to, (2) information reported on the LVC responses, (3) payment status and, if relevant, repayment plan before consolidation, and (4) available information regarding consolidation.

Id. at 6.

In reply, plaintiff highlights that the LVC Processing Guidelines defendants disclosed is dated May 23, 2007.  See Dkt. No. 57 at 5.  Plaintiff posits that, since "[d]efendants . . . claim that the LVC delay was caused by the Remediation, which occurred well after May 23, 2007[,] a clear change in LVC processing policy occurred after the single document produced by [d]efendants was created."  Id.  Plaintiff further contends that Conduent must have issued "some formal policy" or gave "notice to employees" that it "would stop issuing LVCs for a population of thousands of loans."  Id.  Therefore, plaintiff avers, "[e]ven if the delayed LVCs were caused by [Conduent's] remediation of a population of loans . . ., there must be relevant documents, and those must be produced."  Id.

Based upon a review of the parties' arguments and relevant material in the record, the undersigned concludes that plaintiff is not entitled to compel discovery pursuant to Request Nos. 1-3.  As plaintiff acknowledges, defendants provided him with their LCV Processing Guidelines in December 2019, and a spreadsheet of LVC requests for which Conduent was late in processing.  See Dkt. No. 55-1 at 10.  Aside from plaintiff's speculation that other documents concerning Conduent's LVC processing policy may exist, he has not advanced any compelling argument or factual assertion to establish that that defendants' disclosure in this regard was outdated or

incomplete.  See, e.g., Vaigasi v. Solow Mgmt. Corp., No. 11-CV-5088 (RMB/HBP), 2016 WL 616386, at *16 (S.D.N.Y. Feb. 16, 2016) (holding that, "although [the] plaintiff object[ed] to the completeness of [the] defendants' document production, he offer[ed] nothing to support this contention other than his personal opinion that there must be additional non-privileged documents.  This unsubstantiated opinion, in the face of [the] defendants' repeated representations that all requested documents ha[d] either been produced or [we]re the subject of an objection is an insufficient basis on which to enter an order to produce additional documents." (internal citations omitted)).  Indeed, plaintiff states that his reason for making these requests is that they will allow him to demonstrate "whether [d]efendants' policies and procedures were adequate to meet their statutory obligations, to show whether [they] complied with their own procedures, and . . . whether [they] considered modifications to their procedures or other policies in order to meet the statutory obligations."  Dkt. No. 55-1 at 12.  Thus, as defendants represent that they have made a complete disclosure and provided plaintiff with their LVC Processing Guidelines, plaintiff may fulfill the stated purpose of these requests with defendants' prior disclosure, namely whether Conduent's LVC processing procedures were compliant with applicable statutes and regulations and whether they complied with their own procedures.  Similarly, plaintiff fails to establish why any further documents concerning any policy or notice to employees relating to LVC requests during remediation are relevant for his stated purposes and/or to support the claims asserted in his amended complaint.  Accordingly, plaintiff's motion with respect to Request Nos. 1-3 is denied.

## B. Request for Production No. 5

With respect to his request for documents establishing the time it took for Conduent to respond to LVC requests, including any documents explaining delays, plaintiff argues that defendants "have not responded or produced any documents in response to this request other than the spreadsheet." Dkt. No. 55-1 at 12. Defendants objected to this request in response to plaintiff's initial demand as "vague and ambiguous"; to the extent it sought "documents containing confidential, proprietary, trade secret, financial, or commercially sensitive business information"; and to the extent it sought "to compel the production of documents containing confidential settlement information regarding matter(s) to which [p]laintiff was not a party," but stated that, "[s]ubject to and without waiving th[o]se objections, defendants [we]re willing to meet and confer with [p]laintiff to better define this Request, or to respond to a more narrowly tailored [r]equest." Dkt. No. 49-2 at 5-6. Defendants did not specifically address this request in their opposition.

As an initial matter, plaintiff has offered no argument or factual assertions to establish how or why the spreadsheet is insufficient to satisfy this request. See Dkt. No. 55-1 at 12. In particular, as defendants have stated, and plaintiff has not refuted, the time it took for Conduent to respond to LVC requests relating to the loans affected by the remediation is readily discernable from the spreadsheet, which provides the "dates each LVC request was received and responded to." Dkt. No. 56 at 6. Consequently, the undersigned concludes that defendants have satisfied this request through production of the spreadsheet, and that plaintiff has failed to provide any basis for

compelling production of further documents pursuant to this request; therefore, plaintiff's motion in this respect is denied.

## C. Request for Production Nos. 7 and 8

Plaintiff argues that documents containing analyses, studies, or reports of any borrowers' complaints or inquiries by governmental agencies or by Direct Loan Servicers regarding LVC requests "are relevant because they go to [d]efendants' knowledge of their wrongful acts, failure to take reasonable steps to correct the pervasive failure to comply with the LVC requirements, and could contain evidence of harm to borrowers."  Dkt. No. 55-1 at 13.  Plaintiff contends that, with respect to defendants' objection that such documents would contain the personal information of non-parties, plaintiff offered to accept "summaries, analysis or reports concerning [d]efendants' performance of its obligations to provide an LVC," but that [d]efendants have not produced any documents or offered any compromise as to th[ese] request[s]." Id.

Defendants counter that documents relating to communications between Conduent and non-parties are irrelevant for the claims asserted in the Amended Complaint, as "Conduent has already explained the cause and scope of any delays" and "its knowledge and responsiveness go to issues of liability and damages, which are premature to discover now."  See Dkt. No. 56 at 17, 19.  In addition, defendants argue that documents concerning complaints by other borrowers "serve no other purpose than . . . to discover the identities of the putative class" "for which [p]laintiff does not, and cannot, identify any legitimate need."  Id. at 16-17.

In reply, plaintiff contends that he "does not have to take [d]efendants at their word, and   . . . is entitled to documents concerning the nature of the complaints and [Conduent's] response."  Dkt. No. 57 at 6.  Plaintiff posits that "[t]hese documents are relevant because [Conduent] must have handled complaints through systematic means," and that "it defies logic that [Conduent] would leave it to personnel to handling complaints/inquiries from customers, Direct Loan Servicers, and government agencies to respond to customer complaints without providing formal guidance or having internal discussions regarding what should be said and done."  Id.

The undersigned agrees with defendants that documents relating to non-parties' complaints to Conduent regarding LVC requests are irrelevant for purposes of the claims advanced in plaintiff's Amended Complaint.  Plaintiff does not dispute that the spreadsheet provides reports relating to LVCs processed by Conduent that show when delays occurred, the number borrowers affected by the remediation, the dates when borrowers made LVC requests and the dates when Conduent responded to those requests.  See Dkt. No. 56 at 6; see generally Dkt. Nos. 55-1; 57.  In addition, the undersigned finds these requests overbroad, as they are not limited to any particular time period.  Accordingly, insofar as plaintiff seeks to compel further production of documents pursuant to Request Nos. 7 and 8, his motion is denied.

## D. Request for Production Nos. 9-11

Plaintiff contends that he is entitled to discovery of "[a]ll" documents concerning disclosure statements and master promissory notes provided by defendants to borrowers of student loans, as well as documents concerning borrowers' rights to repay

FFELP student loans "to meet his burden on a class certification to demonstrate typicality and commonality."  Dkt. Nos. 49-1 at 6-7; 55-1 at 13.  He argues that, although defendants "referred [him] to the Uniform Disclosure Statement promulgated by the [U.S. Department of Education] and promissory notes associated with [his] FFELP loans[, d]efendants have not confirmed that the Uniform Disclosure Statement is substantially similar for all borrowers."  Dkt. No. 55-1 at 13.

Defendants argue in opposition that such documents include personal information of non-party borrowers and "have no bearing on [p]laintiff's claims (or his ability to certify a class)—and are grossly disproportionate to the needs of this case—as the relevant loan 'terms' and 'disclosures' are uniform among the putative class."  Dkt. No. 56 at 20.  Further, defendants contend that plaintiff's argument that defendants "have not confirmed that the Uniform Disclosure Statement is substantially similar for all borrowers" is misplaced because "this information is codified in the [Higher Education Act] and its regulations," which "requires the [U.S. Department of Education] to 'prescribe common application forms and promissory notes, or master promissory notes, to be used for applying for loans under [FFELP]."  Id. (quoting 20 U.S.C. § 1082(m)(1)(A)).  Moreover, defendants aver that "Conduent has already disclosed any of the loan terms that differed among the putative class members—including the loan balance, interest rates, and payment status—through the aforementioned spreadsheet." Id. at 21.  Thus, defendants urge, "[p]laintiff does not, and cannot identify any legitimate need for any of the putative class members' loan documents, especially considering that such documents would contain private and confidential information of non-parties."  Id. at 20-21.

In reply, plaintiff argues that "[d]efendants ignore that [p]laintiff only seeks these documents to confirm that they are substantially similar" and that, "[t]o the extent [d]efendant[s] do[] not contest the materially similar nature of documents provided to all [b]orrowers, production is not necessary."  Dkt. No. 57 at 6.

As defendants argue, and plaintiff does not meaningfully dispute, defendants have already disclosed the relevant information in satisfaction of these requests by providing plaintiff with the spreadsheet, which they represent disclosed the differing terms among the putative class members.  See Dkt. No. 56 at 21.  Further, contrary to plaintiff's contention, defendants have affirmed to plaintiff that the disclosure statement and master promissory note associated with his loans are substantially similar for all individuals who borrowed under the FFELP, as required under the Higher Education Act and its regulations.  See id. at 20; 20 U.S.C. § 1082(m)(1)(A) ("The Secretary, in cooperation with representatives of guaranty agencies, eligible lenders, and organizations involved in student financial assistance, shall prescribe common application forms and promissory notes, or master promissory notes, to be used for applying for loans under [the FFELP].").  Thus, as plaintiff conceded in his reply, because [d]efendant[s] do[] not contest the materially similar nature of documents provided to all [b]orrowers, production is not necessary."  Dkt. No. 57 at 6.  Accordingly, plaintiff's motion with respect to Request Nos. 9-11 is denied.


### E. Request for Production No. 12

Plaintiff argues that documents exchanged between loan borrowers and Direct Loan Servicers concerning borrowers' attempts to pay off or consolidate their FFELP

loans are relevant because they "go to [d]efendants knowledge of their failure to comply with their obligations, the scope of [d]efendants' wrongful acts, and may provide evidence of damages to borrowers." Dkt. No. 55-1 at 14. Plaintiff notes that defendants rejected his proposal to narrow "the request to summaries or reports that evidence documents exchanged with Direct Loan Services." Id. Moreover, plaintiff states that, through his motion to compel, he "is not seeking to identify the [c]lass [m]embers." Dkt. No. 55-1 at 18 (capitalization omitted); see Dkt. No. 57 at 4.

Defendants objected to this request as vague and ambiguous and to the extent the request sought names and contact information of putative class members or confidential or proprietary information but stated that they were willing to meet and confer with plaintiff regarding this request or respond to a more narrowly tailored request. See Dkt. No. 49-2 at 12. Defendants reassert their objection, in general terms, in opposition to plaintiff's motion to compel insofar as they contend that any communications between non-party borrowers and Direct Loan Servicers are irrelevant. See Dkt. No. 56 at 19. Plaintiff's reply does not directly reference Request No. 12. See generally Dkt. No. 57.

The undersigned concludes that plaintiff has failed to demonstrate why he is unable to use the information provided in defendants' December 2019 disclosure to satisfy this request. As discussed above, the spreadsheet defendants provided includes the "payment status and, if relevant, repayment plan before consolidation" of each of affected borrowers' loans along with the dates each LVC request was received and responded to. Dkt. No. 56 at 6. Further, the undersigned finds that the documents exchanged between defendants and any Direct Loan Servicer with respect to other

borrowers' requests to consolidate or pay off loans, is irrelevant for purposes the claims in plaintiff's amended complaint.  Accordingly, plaintiff's motion is denied insofar as he seeks to compel disclosure pursuant to Request No. 12.

### F. Request for Production Nos. 15-17[3]

Plaintiff specifies in his motion that Request Nos. 15-17 "seek documents concerning the Consent Orders [Conduent] entered into with the CFPB and the [NYS]DFS resolving investigations into [Conduent's] student loan servicing, including allegations of delays in providing LVCs."  Dkt. No. 55-1 at 14.  Thus, plaintiff's motion seeks a narrower set of documents than those stated in Request Nos. 15-17 in his demand for production, which requested "[a]ll documents concerning, relating to, referring to or evidencing litigation concerning a [b]orrower's efforts or attempts to obtain an LVC in connection with the Borrower's efforts to pay-off or convert an existing FFELP Student Loan into a Direct Consolidation Loan" and "[a]ll documents concerning, relating to, referring to, the "Consent Order[s]" Conduent entered into with the CFPD and the NYSDFS.  Dkt. No. 49-1 at 7-8.  Plaintiff argues that, contrary to defendants' objections to these requests, "[d]efendants . . . have no privilege in documents that were voluntarily disclosed to a government agency."  Dkt. No. 55-1 at 14.  Further, plaintiff contends that defendants have "not offer[ed] any description of their purportedly privileged information they contend to be in CFPB's or [NYS]DFS's possession" and do not "assert that they entered into a confidentiality agreement with either [NYS]DFS or

---

[3]  Although not discussed by either party, plaintiff's motion actually seeks disclosure pursuant to Request Nos. 15, 16, and 17, as he seeks documents relating to the NYSDFS Consent Order—which he demanded pursuant to Request No. 17.  See Dkt. No. 49-1 at 8.

CFPB." Id. at 14-15.  Moreover, plaintiff avers that "it is unlikely that *all* of the information [provided to CFPB or NYSDFS] was ever subject to a claim of privilege or work product" and defendants do not "offer any explanation to suggest that any materials they disclosed to CFPB or [NYS]DFS were proprietary or confidential." Id. at 15.

Defendants argue in opposition that plaintiff incorrectly asserts that defendants have claimed that the attorney client privilege applies to these documents.  See Dkt. No. 57 at 21.[4]  "Rather," defendants contend, "the documents in the possession of each agency must be kept confidential pursuant to the relevant statute(s)." Id.  In particular, defendants stated that "documents received by the CFPB as part of an investigation are confidential under 12 U.S.C. § 5562(d)." Id.  Further, defendants contend, "[m]aterials submitted to the NY[S]DFS in the course of its investigations are likewise protected from disclosure under New York Banking Law § 36(10)." Id. at 22.  Defendants conclude that if "[p]laintiff demonstrates a legitimate need for any documents produced during either of these investigations, or if the Court otherwise orders it, [p]laintiff can seek from [d]efendants those documents and information he considers relevant to his case.  What [p]laintiff cannot do is attempt to end-run around the limitations imposed by Fed. R. Civ. P. 26—by seeking to collect all of the documents in the agencies' possession." Id.

In reply, plaintiff contends that "privileges on which [d]efendants rely limit the government agency's obligation to produce documents, [but do] not protect the party

---

[4]  Contrary to defendants' contention in opposition to plaintiff's motion, defendants did object to Request Nos. 16 and 17, in part, on the basis that those requests called for the production of attorney-client privileged material.  See Dkt. No. 49-2 at 17, 19.  However, as plaintiff contends, defendants asserted their objections in this regard in general terms and did not specify which documents were purportedly protected by that privilege.  See Dkt. No. 55-1 at 14-15.

that produced the documents to the agency." Dkt. No. 57 a 6-7.  Further, plaintiff

emphasizes defendants' argument that he is able to seek disclosure of relevant

documents relating to the Consent Orders from defendant, but not the governmental

agencies, and clarifies that, "by [his] motion to compel, [he] is not seeking documents in

the agencies' possession" but rather, "seeks documents in [d]efendants' possession."

Id. at 7.

New York State Banking Law § 36 provides, in relevant part, that "[t]he

superintendent [of the Department of Financial Services shall have the power to

examine every . . . licensed lender at any time . . . whenever in his judgment such

examination is necessary or advisable."  N.Y. BANKING LAW § 36(1).  Section 36 further

provides that

> All reports of examinations and investigations,
> correspondence and memoranda concerning or arising out
> of such examination and investigations, including any duly
> authenticated copy or copies thereof in the possession of
> any . . . licensed student loan servicer . . . shall be
> confidential communications, shall not be subject to
> subpoena and shall not be made public unless, in the
> judgment of the superintendent, the ends of justice and the
> public advantage will be subserved by the publication
> thereof, in which event the superintendent may publish or
> authorize the publication of a copy of any such report or any
> part thereof in such manner as may be deemed proper or
> unless such laws specifically authorize such disclosure.

Id. at § 36(10) (emphasis added).  Here, there is no dispute that Conduent was, at all

relevant times, a licensed student loan servicer and would, therefore, be subject to

Section 36(10).  See id.  However, the NYSDFS's investigation of Conduent, which

ultimately led to the 2019 Consent Order between NYSDFS and Conduent, was brought

pursuant to New York Financial Services Law ("FSL") § 404 to determine whether

Conduent complied with the requirements of the New York State Financial Services Law and the Consumer Financial Protection Act of 2010 (12 U.S.C. § 5481 *et seq.*).  See Dkt. No. 55-6 at 2.  The NYSDFS Consent Order makes no mention of New York State Banking Law § 36, and it is unclear whether documents generated in connection with a NYSDFS investigation conducted pursuant to FSL § 404 fall within the confidentiality provisions of Banking Law § 36(10).  See id.  Indeed, neither party has briefed the Court on that issue.  Moreover, after a diligent inquiry and despite the language of Banking Law § 36(10), which appears to render confidential all documents in the possession of a licensed student loan servicer that were generated in connection with a NYSDFS investigation, the undersigned was unable to find any caselaw applying that statutory provision to prohibit disclosure of such documents by a private entity.  In any event, even where a state agency asserts the privilege stated in Section 36(10), New York Courts have rejected a "blanket, unilateral assertion of privilege as to all" documents generated in connection with an investigation by the superintendent.  See Stratford Factors v. New York State Banking Dep't, 10 A.D.2d 66, 71-72, 197 N.Y.S.2d 375, 380 (1960) (holding that "[t]he opportunity should have been given to the Special Term Justice, to whom the claim of privilege of non-disclosure was made . . ., to examine the documents, *ex parte* and *in camera*, and then to determine whether they were encompassed within the statutory privilege. . . .  The acceptance of the blanket, unilateral assertion of the privilege as to all the papers and documents recited in the subpoenaes without such a preliminary examination by the [c]ourt was not consonant with [the] plaintiff's right to the use of all relevant evidence not specifically bounded by the restrictions of Section 36[10] of the Banking Law.").

Similarly, defendants rely on 12 U.S.C § 5562(d) in support of their assertion that "documents received by the CFPB as part of an investigation are confidential." See Dkt. No. 56 at 21.  Section 5562(d)(1) provides, as defendants note, that "[d]ocumentary materials and tangible things received as a result of a civil investigative demand shall be subject to requirements and procedures regarding confidentiality, in accordance with rules established by the [CFPB]."  Defendants also cite Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau, which states that "[m]aterials submitted in response to a [Civil Investigation Demand issued by the CFPB] are considered confidential [pursuant to section] 5562(d), and a recipient may withhold responsive material based on a 'claim of privilege.'"  979 F. Supp. 2d 104, 108 (D.D.C. 2013) (quoting 12 C.F.R. § 1080.8(a)), aff'd, 785 F.3d 684 (D.C. Cir. 2015).  However, 12 C.F.R. § 1080.8(a) appears to contemplate only the right of an entity that has been issued a Civil Investigation Demand by the CFPB to assert a claim of privilege to withhold material from disclosure to the CFPB.  See 12 C.F.R. § 1080.8(a) (providing the procedure for asserting a claim of privilege in response to a CID issued by the CFPB).  Indeed, the only case that the undersigned was able to find that cited 12 C.F.R. § 1080.8—Morgan Drexen—did so in the context of an individual seeking to withhold materials based on the attorney-client privilege from the CFPB in response to a CID.  See Morgan Drexen, 979 F. Supp. 2d at 108, 120.  Moreover, the only other case defendants cite in this regard, Frank LLP v. Consumer Fin. Prot. Bureau (288 F. Supp. 3d 46 (D.D.C. 2017)), did not involve 5562(d) or 12 C.F.R. § 1080.8 but rather, concerned the CFPB's requirement to disclose documents in light of the applicability of an exception to the Freedom of

Information Act ("FOIA") pursuant to 5 U.S.C. § 552(7).  See Frank LLP v. Consumer Fin. Prot. Bureau, 288 F. Supp. 3d 46, 53 (D.D.C. 2017).

Based on the foregoing, the undersigned finds that defendants have failed to establish that plaintiff is precluded from obtaining documents relating to the Consent Orders entered into between Conduent and the NYSDFS and the CFPB based on New York Banking Law § 36(10) or 12 U.S.C § 5562(d) and its supporting regulations. Indeed, as plaintiff observes, defendants appear to concede that plaintiff may compel discovery of documents related to the Consent Orders from defendants, but not from the NYSDFS or the CFPB.  See Dkt. No. 57 at 7; Dkt. No. 56 at 22 (acknowledging that if "[p]laintiff demonstrates a legitimate need for any documents produced during either of the[] investigations, or if the Court otherwise orders it, [p]lainitiff can seek from [d]efendants those documents and information that he considers relevant to the case. What [p]laintiff cannot do is attempt to end-run around the limitations imposed by Fed. R. Civ. P. 26—by seeking to collect all of the documents in the agencies' possession.").

The undersigned finds that Request Nos. 15-17, as stated in plaintiff's demand for production, are overbroad; however, the undersigned concludes that plaintiff is entitled to documents relating to the Consent Orders to the extent limited by his motion as "documents concerning Consent Orders [Conduent] entered into with the CFPB and the [NYS]DFS resolving investigations into CES's student loan servicing, including allegations of delays in providing LVCs."  Dkt. No. 55-1 at 14.  The undersigned agrees with plaintiff that, "[t]o the extent that the documents produced to CFPB and [NYS]DFS concern [d]efendants' practices for servicing student loans and responding to LVC requests, the documents are . . . relevant," as they address Conduent's student loan

servicing and LVC processing practices during the remediation—the period of time in which defendants have conceded that plaintiff's LVC request was made.  Dkt. No. 56 at 9.  The undersigned finds that plaintiff is entitled to discovery of these documents only to the extent that such production (a) is not duplicative of documents previously disclosed by defendants; (b) does not contain personal identifying information of non-parties or confidential settlement information or such information has been sufficiently redacted; and (c) does not require defendants to produce documents that are subject to a claim of privilege, such as the attorney-client privilege.  To the extent that defendants contend that any of the documents they are being ordered to produce are subject to privilege, they may withhold production of those documents, but must provide plaintiff with a privilege log in compliance with Fed. R. Civ. P. 26(b)(5).

## G. Defendants' Cross Motion

Defendants cross move for a protective order pursuant to Fed. R. Civ. P. 26(c). See Dkt. No. 56 at 6.

Under Rule 26(c)(1),

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including the time and place or the allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method

> other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the
> scope of disclosure or discovery to certain matters; (E)
> designating the persons who may be present while the
> discovery is conducted; (F) requiring that a deposition be
> sealed and opened only on court order; (G) requiring that a
> trade secret or other confidential research, development, or
> commercial information not be revealed or be revealed only
> in a specified way; and (H) requiring that the parties
> simultaneously file specified documents or information in
> sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1).  "Before a protective order is issued, Rule 26(c)(1) requires a showing of 'good cause.'"  Burks v. Stickney, No. 9:16-CV-0759 (FJS/DEP), 2017 WL 1401312, at *4 (N.D.N.Y. Apr. 19, 2017) (quoting FED. R. CIV. P. 26(c)(1)).  "Good cause exists when the party seeking protection demonstrates that 'disclosure will result in a clearly defined, specific and serious injury.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  Moreover, the harm must be significant not a mere trifle.'"  Id. (quoting Schiller v. City of New York, 04-CV-7922, 04-CV-7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007)).

"This provision gives the court broad discretion to tailor discovery to the needs of the case and the interests of the discovered party, and in doing so the court may undertake some substantive balancing of interests."  Greenberg v. Smolka, No. 03-CV-8572 (RWS/MHD), 2006 WL 1116521, at *10 (S.D.N.Y. Apr. 27, 2006) (internal quotation marks and citation omitted).  In undertaking its balancing analysis,

> the court[] [is] to give weight to legitimate privacy interests
> even if the information in question is not protected by an
> enforceable privilege.  In doing so, the court, in its discretion,
> is authorized by this subsection to fashion a set of limitations
> that allows as much relevant information to be discovered as
> possible, while preventing unnecessary intrusions into the
> legitimate interests—including privacy and other

> confidentiality interests—that might be harmed by the
> release of the material sought.

Id. at *11 (internal quotation marks and citations omitted).

Here, in support of their cross motion, defendants primarily argue that the documents plaintiff demands contain personal identifying/private information of non-parties, which defendants posit plaintiff improperly seeks in order to identify putative class members. See Dkt. No. 56 at 16.[5] However, plaintiff has made clear that he is not seeking to identify putative class members and that he "does not object to [d]efendants redacting other borrowers' names and identifying information" from the requested documents. Dkt. No. 55-1 at 17. Moreover, the undersigned has explicitly conditioned defendants' disclosure obligation to documents that either do not contain personal/private identifying information of non-parties or confidential settlement documents or have been sufficiently redacted to remove such information; thus, defendants' disclosure obligation has been "fashion[ed with] a set of limitations that allows as much relevant information to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." Greenberg, 2006 WL 1116521, at *11 (internal quotation marks and citation omitted); see subsection III, F, supra. Accordingly, defendants' cross motion for a protective order is denied.

---

[5] Defendants also argue in opposition to plaintiff's motion that plaintiff is not entitled to discover information to establish the putative class See Dkt. No. 56 at 16-17. However, in light of the undersigned's analysis in subsection III, A-F, the undersigned declines to reach defendants arguments made in opposition in this regard, as they are of no moment to the present motion.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion (Dkt. No. 55) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED**, that defendants produce to plaintiff documents related to the Consent Orders to the extent that the documents produced to the CFPB and the NYSDFS concern defendants' practices for servicing student loans and responding to LVC requests during the period of remediation, but only insofar as such production:

(a) is not duplicative of documents previously disclosed by defendants;

(b) does not contain personal identifying information of non-parties or confidential settlement information or such information has been sufficiently redacted; and

(c) does not require defendants to produce documents that are subject to a valid claim of privilege; and it is further

**ORDERED**, that, to the extent that defendants contend that any of the documents they are being ordered to produce are subject to a valid claim of privilege, they may withhold production of those documents, but must provide plaintiff with a privilege log in compliance with Fed. R. Civ. P. 26(b)(5); and it is further

**ORDERED**, that defendants' cross motion (Dkt. No. 56) is **DENIED**; and it is further

**ORDERED**, that copies of this Decision and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 18, 2020

Albany, New York

Christian F. Hummel
U.S. Magistrate Judge