UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY CHERY, on behalf of
himself and all others similarly
situated,

               Plaintiff,

               -v-                       1:18-CV-75

CONDUENT EDUCATION
SERVICES, LLC, formerly
known as ACS, ACCESS
GROUP, INC., and ACCESS
FUNDING 2015-1, LLC,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

MOORE KUEHN, PLLC           JUSTIN A. KUEHN, ESQ.
Attorneys for Plaintiff
30 Wall Street, 8th Floor
New York, NY 10005

BRAGAR EAGEL & SQUIRE, P.C.   LAWRENCE P. EAGEL, ESQ.
Attorneys for Plaintiff
810 Seventh Avenue, Suite 620
New York, NY 10019

BALLARD, SPAHR LAW FIRM     JOHN GRUGAN, ESQ.
Attorneys for Defendants           DANIEL C. FANASELLE, ESQ.
1735 Market Street, 51st Floor    ELIZABETH SEIDLIN-
Philadelphia, PA 19103                  BERNSTEIN, ESQ.
                                        THOMAS BURKE, ESQ.

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

On January 18, 2018, plaintiff Jeffrey Chery ("Chery" or "plaintiff") filed this putative class action against defendants Conduent Education Services, LLC, formerly known as ACS ("ACS"), Access Group, Inc. ("Access Group"), and Access Funding 2015-1, LLC ("Access Funding"), a group of entities that hold or service certain federal student loans.

Chery's amended complaint alleges that ACS, Access Group, and Access Funding (collectively "Conduent" or "defendants") interfered with his right to pre-pay or consolidate his student loans in accordance with certain guarantees set out in federal law.  The operative complaint asserts six claims: (1) a violation of New York General Business Law § 349; (2) a breach of contract; (3) a breach of the implied covenant of good faith and fair dealing; (4) a request for a declaratory judgment; (5) negligence; and (6) unjust enrichment.  Dkt. No. 19.

On April 24, 2018, Conduent moved to dismiss Chery's complaint.  Dkt. No. 20.  That motion was denied.  *Chery v. Conduent Educ. Servs., LLC*, 2019 WL 1427140 (N.D.N.Y. Mar. 29, 2019).  Thereafter, the parties engaged in some contested discovery before the assigned magistrate judge.  Dkt. No. 60.

On January 15, 2021, Chery moved under Federal Rule of Civil Procedure ("Rule") 23 seeking to certify a class of student loan borrowers whose right to prepay their Federal Family Education Loan Program ("FFELP") student loans was thwarted because Conduent failed to provide a Loan Verification Certificate ("LVC") within ten days of the borrower's filing of a Federal Direct Consolidation Loan Application (the "Class"). Dkt. No. 79.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

Chery is a Virginia resident who took out nine FFELP student loans while he lived in Queens, New York. Am. Compl. ¶ 12. ACS, a Delaware company that maintains an office in Utica, New York, initially serviced plaintiff's loans. *Id*. ¶¶ 12–13. Access Group, a Delaware corporation registered to do business in New York, owned seven of plaintiff's loans, and Access Funding, another Delaware company, owned the other two. *Id*. ¶ 14–15.

Chery's FFELP loans were governed by a Master Promissory Note ("MPN"), which included a form disclosure statement ("Disclosure Statement"). As relevant here, the MPN and Disclosure Statement (collectively the "Contract") together provided that (a) a borrower may prepay all or any part of the unpaid balance on their loans at any time without penalty; (b) the loan is subject to the Higher Education Act of 1965 and

applicable U.S. Department of Education regulations; and (c) repayment obligations are interpreted according to applicable federal law and regulations, applicable state law and regulations governing the FFELP program, and the terms of the MPN.  *See* Exs. E and F to Kuehn Decl., Dkt. Nos. 79-8, 79-9.

On February 4, 2016, Chery submitted a Federal Direct Consolidation Loan Application to FedLoan Servicing ("FedLoan"), an entity that services federal student loans for the Public Service Loan Forgiveness Program ("PSLF").  Am. Compl. ¶¶ 16, 28.  As part of this application process, FedLoan instructed ACS to certify the balance of each of plaintiff's loans using an LVC.  *Id*. ¶¶ 29, 31.  Although applicable federal regulations required ACS to "complete the LVC and return it to FedLoan within ten business days of having received it," it took ACS nearly ten months to certify plaintiff's student loans.  *Id*. ¶¶ 3, 30–31, 34.  Plaintiff alleges that he was harmed as a result of this delay.  *Id*. ¶ 35.

The proposed Class members each held one or more FFELP student loans governed by the same material Contract terms.  *See* Am. Compl. ¶ 45; *see also* Dkt. No. 16 at 16.  The class complaint alleges that Class members sought to pay off or consolidate their FFELP student loans in accordance with the terms of the Contract.  Am. Compl. ¶ 45.  The class complaint further alleges

that the Class members were harmed because Conduent failed to return their LVCs within the time period mandated by law. *Id*.

According to plaintiff, Conduent has admitted that that it failed to return LVCs within the time period mandated by law. *See* Ex. A to Kuehn Decl., Dkt. No. 79-4. In fact, Conduent entered into consent orders with the federal Consumer Financial Protection Bureau ("CFPB") and the New York State Department of Financial Services ("DFS") in which it conceded that it had failed to do so. Ex. B to Kuehn Decl., Dkt. No. 79-5 ¶¶ 24–26, Ex. C to Kuehn Decl., Dkt. No. 79-6 ¶¶ 22–25.

Discovery has revealed that at least 3,361 putative Class members suffered an average LVC processing delay of 173 days. Ex. D to Kuehn Decl., Dkt. No. 79-7 ¶¶ 21–22. Plaintiff's expert calculates that the Class has suffered damages in the range of $2.5 million to $3.4 million. *Id*. ¶ 31.

## III. <u>LEGAL STANDARD</u>

Rule 23 requires a party seeking certification to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

Rule 23 also requires a party to satisfy at least one of three additional requirements:

>  (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>   (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
>   (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>  (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
>  (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b).

## IV. **DISCUSSION**

Chery contends that class certification is warranted because the relevant Contract terms were materially the same for every member of the proposed

Class. Pl.'s Mem., Dkt. No. 79-1 at 7–8.[1] According to plaintiff, readily available data establishes that the Class members suffered delays in processing their LVCs that resulted in quantifiable harm. *Id.* at 10.

Conduent concedes that it failed to adhere to the ten-day processing rule for LVCs. Defs.' Opp'n, Dkt. No. 80 at 6. Even so, defendants argue that the length of the delay was not uniform for each Class member, and therefore an analysis of whether any individual borrower suffered harm would depend on the particular status of the loan(s) in question. *Id.* at 6–7. Further, defendants argue that plaintiff's class certification motion should be "summarily denied" as to Access Group and Access Funding because his motion "does not detail *anything* that [these defendants] allegedly did or did not do." *Id.* at 8 (emphasis in original).

A district court enjoys broad discretion when it comes to resolving questions of class certification because it is often in the best position to assess the propriety of the class and has the ability . . . , to alter or modify the class, create subclasses, and decertify the class whenever warranted." *Sumitomo Copper Litig. v. Credit Lyonnaise Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

---

[1] Pagination corresponds to CM/ECF.

"However, because the class action device is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, a party seeking class certification must affirmatively demonstrate its compliance with the Rule." *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 572 (N.D.N.Y. 2017) (cleaned up).  Accordingly, "the district court is required to make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, and must resolve material factual disputes relevant to each Rule 23 requirement." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (cleaned up).

In sum, "[c]lass certification is appropriate where the proposed class meets, by a preponderance of the evidence following a court's 'rigorous analysis,' the requirements of Rule 23(a) and the proposed class constitutes one of the types of classes enumerated in Rule 23(b)." *Stinson*, 282 F.R.D. at 367 (citation omitted).

### A. Rule 23(a)

Chery seeks to certify the following Class:

> All student loan borrowers who submitted an application to consolidate one or more FFELP Loans into a Direct Consolidated Loan between January 18, 2012, and the date of the Order certifying the Class, for which Defendants failed to provide an LVC within ten days of receiving the request therefor.

1. **<u>Numerosity</u>**

The first element of Rule 23(a) requires the plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). As the Second Circuit has explained:

> the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

"[T]he numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Conway*, 236 F. Supp. 3d at 574 (cleaned up). Accordingly, "[n]umerosity is presumed for classes larger than forty members." *Id.*

Upon review, Chery has carried his burden on this element. Plaintiff's submissions identify at least 3,361 putative Class members who sought LVCs for 7,393 loans. Ex. D to Kuehn Decl., Dkt. No. 79-7 ¶¶ 21–22. In addition to the sheer number of Class members, the contextual factors—in particular

judicial economy and the reality that individual Class members are unlikely to file separate suits for relatively small recoveries—weigh in favor of finding this requirement satisfied as well.  Accordingly, plaintiff has demonstrated by a preponderance of the evidence that the class is sufficiently numerous such that joinder of all members is impracticable.

## 2. **Commonality**

The second element of Rule 23(a) requires the plaintiff to demonstrate that there are "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Importantly, this "does not require all questions of law or fact to be common," and "even a single common question will suffice." *Sykes*, 285 F.R.D. at 286.

"The common question must lend itself to 'classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sykes*, 285 F.R.D. at 286 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  In other words, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id*. (emphasis in original).

Upon review, Chery has carried his burden on this element.  At the very least, plaintiff's submissions establish that the LVCs were delayed because of an issue common to the proposed Class—a remediation process undertaken

because of systematic flaws in Conduent's record-keeping system(s).  *See* Ex. I to Kuehn Decl., Dkt. No. 79-12 ¶ 7; Ex. J to Kuehn Decl., Dkt. No. 79-13 at 41:14–42:11, 103:18–104:15.  As plaintiff explains in his memorandum, a number of related legal issues are derivative of this common delay.  *See* Pl.'s Mem. at 17.  Accordingly, plaintiff has demonstrated by a preponderance of the evidence that there are questions of law or fact common to the class.

### 3. <u>Typicality</u>

The third element of Rule 23(a) requires the plaintiff to demonstrate that "the claims or defense of the representative parties are typical of the claims or defense of the class."  FED. R. CIV. P. 23(a)(3).  "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability."  *Stinson*, 282 F.R.D. at 370–71 (citation omitted).  "When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met."  *Id*. at 371.

Upon review, Chery has carried his burden on this element for substantially the same reasons as set forth above.  *Sykes*, 285 F.R.D. at 287 ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites.").  As plaintiff explains, Conduent concedes that it failed to provide LVCs in accordance with the applicable time limit for plaintiff and

for the proposed Class members. Defendants also concede that the governing language in the Contract is substantially similar as to plaintiff and to each member of the proposed class. Accordingly, plaintiff has demonstrated by a preponderance of the evidence that the claims or defenses of the representative party is typical of the claims or defenses of the class.

### 4. **Adequacy of Representation**

The fourth element of Rule 23(a) requires the plaintiff to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "In addition, class counsel must be qualified, experienced and able to conduct the litigation." *Conway*, 236 F. Supp. 3d at 576.

This inquiry "serves to uncover conflicts of interest between the parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Not every conflict, however, precludes a finding of adequacy." *Sykes*, 285 F.R.D. at 287. "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental,

and speculative conflict should be disregarded at the class certification stage." *Id.* (citation omitted).

Upon review, Chery has carried his burden on this element. There is no indication at this point that plaintiff's interests have diverged from that of the members of the proposed Class, all of whom have allegedly been harmed in substantially the same manner by the same course of conduct. *See generally* Chery Decl., Dkt. No. 79-2. Further, class counsel have substantial class litigation experience. *See* Ex. K to Kuehn Decl., Dkt. No. 79-14; Ex. L to Kuehn Decl., Dkt. No. 79-15. Accordingly, plaintiff has demonstrated by a preponderance of the evidence that the representative parties will fairly and adequately protect the interests of the class.

### B. **Rule 23(b)**

Chery relies on Rule 23(b)(3), which requires the plaintiff to show (1) that "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1. **Predominance**

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau Cty. Strip Search Cases,* 461 F.3d 219, 225 (2d

Cir. 2006) (cleaned up).  In short, the Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Id.*

First, Conduent contends that Chery cannot satisfy the predominance requirement of Rule 23(b)(3) because the pleading's claim under New York General Business Law ("GBL") § 349 (Count One) requires individualized proof regarding whether (1) each putative Class member actually read the Contract; (2) the varying lengths of delay amount to a violation; and (3) each Class member's GBL § 349 claim is duplicative of their breach of contract claim.  Defs.' Mem., Dkt. No. 80 at 20–22.

Upon review, these arguments will be rejected.  First, as Chery points out, the question of whether an act or practice is "materially misleading" under GBL § 349 is an objective inquiry, and "consumers do not have to prove that they actually relied on a misrepresentation."  *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at \*8.  Second, at least for now plaintiff has established that any LVC processing delay of longer than ten days amounts to a violation under the governing law, which obviates the need for individualized inquiries into the particular length of additional delay suffered in each instance.

Third, the question of whether a GBL § 349 claim is duplicative of a breach of contract claim under the facts alleged is also subject to common proof.

Second, Conduent contends that Chery cannot satisfy the predominance requirement of Rule 23(b)(3) because the pleading's claims for breach of contract (Count Two) and breach of the implied covenant (Count Three) require an individual analysis of whether the varying length of delay in each Class member's case ripened into a breach. Defs.' Mem. at 22–23. In defendants' view, "an LVC delay of two weeks is different from an LVC delay of six months." *Id.* at 23.

Upon review, this argument will be rejected for substantially the same reasons set forth above. This is the unusual case in which Chery has identified support for the assertion that the breach of a standard, common form contract is established after ten days of processing delay because of a governing rule of law. And the alleged existence of a common, underlying reason for that delay—a servicing system that was unable to handle borrower's requests—is also a common issue susceptible to common proof.

Third, Conduent contends that Chery cannot satisfy the predominance requirement of Rule 23(b)(3) because the pleading's claims for negligence (Count Five) and unjust enrichment (Count Six) require individualized proof to determine whether the "economic loss doctrine" applies as a defense to the claim. Defs.' Mem. at 24. Upon review, this argument will also be rejected

- 15 -

because "the determination of the existence of a contractual relationship between Class members and Conduent rests on common facts and contains no predominating individual issues." Pl.'s Reply, Dkt. No. 81 at 9.

Fourth, Conduent Contends that Chery has failed to demonstrate that damages can be calculated on a class-wide basis. Defs.' Mem. at 24–28. As defendants explain, it is not always financially beneficial for a student loan borrower to consolidate their FFELP loans into a consolidation loan. *Id.* at 25. Thus, in defendants' view, the calculation of whether any individual borrower suffered damages would require a series of individual assessments as to each member of the proposed Class. *Id.* at 25–26.

This argument will also be rejected. The alleged harm involves injury caused by the LVC processing delay. Plaintiff's expert has offered a facially reasonable approach to calculating this harm on both an individual and a class-wide basis. The alleged harm also involves having payments erroneously applied to FFELP loans instead of direct loans, two different loan products. Notably, courts have recognized that awarding statutory damages under GBL § 349 can be appropriate even in the absence of "pecuniary harm or quantifiable economic loss." *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 256 (W.D.N.Y. 2019). In short, plaintiff's damages "model survives the minimal scrutiny" required by Rule 23(b)(3); *i.e.*, his "theory of liability matches [his] theory of damages and individualized

damages issues will not predominate." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015).

### 2. Superiority

Finally, Conduent contends that Chery cannot satisfy the superiority requirement of Rule 23(b)(3) because "he cannot surmount the overwhelming difficulties that would hinder administration of the putative class." Defs.' Mem. at 29. According to defendants, each claim will require a "[c]omplex financial assessment[ ]" that is "better handled through separate actions brought by the individuals who believe they have been affected." *Id*.

In assessing this "superiority" question, Rule 23(b)(3) instructs courts to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)–(D).

Upon review, these factors favor certification. As Chery points out, each individual Class member's claim is likely to be relatively small, making individual claims unlikely to be prosecuted. Likewise, this litigation has progressed through partial discovery, and neither party has identified any other active cases pending on these same issues. As the Second Circuit has

cautioned, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobras Secs.*, 862 F.3d 250, 268 (2d Cir. 2017) (cleaned up).

## C. Ascertainability

Courts have written a third, "implied requirement" into Rule 23: a party seeking certification must demonstrate that the proposed class is "ascertainable." *Conway*, 236 F. Supp. 3d at 573. Under this additional element, "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson*, 282 F.R.D. at 367 (citation omitted). Upon review, Chery has carried his burden on this element because the data produced in discovery has generated an objectively identifiable set of borrowers who have allegedly been harmed.

## D. Class Counsel

Finally, Chery has moved to appoint Bragar Eagel & Squire, P.C. ("BES") and Moore Kuehn, PLLC ("MKPLLC") as co-counsel for the Class. Pl.'s Mem. at 25. Under Rule 23, "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). In making this appointment, a court must consider (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the

action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). A court may also consider, *inter alia*, "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Upon review, this motion will be granted for the reasons set forth *supra* in section IV.A.4.

## V. **CONCLUSION**

Chery has demonstrated by a preponderance of the evidence that certification of the Class is appropriate.[2] Plaintiff has also demonstrated that BES and MKPLLC should be appointed as co-counsel to the Class.

Therefore, it is

ORDERED that

1. Chery's motion for class certification is GRANTED;

2. Chery is appointed as representative of the Class; and

3. BES and MKPLLC are appointed as co-counsel to the Class.

IT IS SO ORDERED.

Dated: May 5, 2021
       Utica, New York.

_____
David N. Hurd
U.S. District Judge

---

[2] Conduent's contention that certification should be denied as to Access Group and Access Funding is rejected for the reasons set forth in Chery's brief. Pl.'s Reply at 13–14.