# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY CHERY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONDUENT EDUCATION SERVICES, LLC, *f/k/a* ACS, ACCESS GROUP, INC., and ACCESS FUNDING 201501, LLC.<br><br>Defendants. | **Civ. No. 1:18-cv-75 (DNH/CFH)** |

## SUPPLEMENTAL AND AMENDED EXPERT REPORT OF WILLIAM JEFFERS, CFA

**INTRODUCTION**

1. I am a principal of The Griffing Group, LLC, a business valuation consulting firm located in Oak Park, Illinois. I have been retained by Bragar Eagel & Squire, P.C., and Moore Kuehn PLLC, Counsel for Plaintiff in the above-captioned class action (the "Action"), as a damages expert with extensive valuation experience. My curriculum vitae containing my credentials and prior expert testimony is attached hereto as Exhibit A.

2. The Griffing Group is being compensated for the time I spend on this matter at the rate of $600 per hour. Time incurred on this matter by other analysts at The Griffing Group is being billed at the rate of $200 per hour. The fees paid to my firm are not contingent upon any opinion I offer or the outcome of any litigation.

3. Members of my firm, working under my direction and supervision, have assisted me in the preparation of this report and the underlying analysis. The opinions and conclusions stated in this report are mine. The documents on which I relied are identified below.

**SCOPE AND METHODOLOGY**

4. I have been asked to provide an analysis and calculation of damages suffered by a class of student loan borrowers whose loans were serviced by Conduent Educational Services, LLC ("CES" or "Conduent"), who requested a Loan Verification Certificate ("LVC") from Conduent in connection with a request to consolidate one or more Federal Family Education Loan Program loans ("FFELP Loans") into a Direct Consolidated Loan ("Direct Consolidation Loan"), and whose consolidation was delayed or denied because Conduent did not provide the LVC within the legally mandated ten-day period (the "Class").

5. Upon consolidation of the borrower's loans into a Direct Consolidation Loan, a borrower's loans will be owned by the federal government and serviced by an entity other than Conduent. Thus, upon consolidation, Conduent would no longer collect the principal and interest on the loans, no longer pay out funds to the prior loan owners, and no longer receive a servicing fee for the loans. By failing to provide timely LVCs, Conduent delayed the consolidation process for thousands of loans, as a result of which, borrowers continued making payments to Conduent.

6. Further, borrowers seek to consolidate their FFELP Loans into Direct Consolidation Loans to secure various benefits available under the Direct Consolidation Loan Program such as access to loan repayment and forgiveness programs. For example, a borrower may seek to consolidate his or her student loans to make qualifying payments towards a program that allows for loan forgiveness after making a certain number of qualifying payments. Or, a borrower may seek to enter a program that allows for reduced monthly payments. By delaying the consolidation process, Conduent delayed borrowers' ability to enter into and accrue payments under such programs. As a result, borrowers who would have had lower monthly payments or who would have accrued payments toward loans forgiven did not.

Case 1:18-cv-00075-DNH-CFH Document 73-3 Filed 08/19/21 Page 4 of 19

**FACTS AND DATA RELIED UPON**

7. I reviewed the Amended Class Action Complaint (the "Complaint") filed on behalf of Jeffrey Chery and all others similarly situated. I also reviewed an untitled 192-page pdf spreadsheet produced by Defendants in this action which, I understand, purports to list all borrowers and loans for whom Conduent was late in providing an LVC. I also reviewed the US Bureau of Consumer Financial Protection Administrative Proceeding, File No. 2019-BCFP-0005. Imo: Conduent Education Services, LLC, Consent Order, May 1, 2019.[1]

8. When I prepared my initial expert report, the data provided by Conduent was incomplete in that it did not specify the amount of payments made by each borrower during the period between the time that an LVC was requested and the time that the LVC was provided. Without that data, I calculated damages based on the amount of the monthly payment for each loan (which was included in the Conduent schedule), without knowing whether those payments had been made. I therefore multiplied the monthly payment amount by the number of months that the LVC was delayed. As a result of the deposition of Conduent's Rule 30(b)(6) witness, plaintiff learned that for various reasons, many borrowers either did not make one or more monthly payments, or made payments in lesser amounts.

9. At plaintiff's counsel's request, Conduent thereafter provided the amount of the total payments made with respect to each loan during the period when the LVC was delayed. With this additional data, I was able to recalculate the Class wide damages under the analysis set forth below. As a result, this Supplemental and Amended Report accounts for this additional information which was not available when I prepared my initial expert report.

---

[1] https://files.consumerfinance.gov/f/documents/cfpb_conduent-education-services-consent-order_2019-05.pdf

## SUMMARY OF OPINIONS

10. The quantifiable damages suffered by the Class are in the range of $2.5 million and $3.4 million. My calculation and conclusions focus directly on the loans, rather than the borrowers themselves, because in many instances individual borrowers have multiple loans. For the purpose of this analysis, the loans have been divided into three categories:

- Loans where no payments were made during the period.
- Loans where the payments were less than $1,000 in total during the period.
- Loans where the payments were greater than $1000 in total during the period.

11. I find that the damages were caused by Conduent's failure to provide a timely Loan Verification Certificates ("LVC") following a student loan borrower's request to consolidate his or her loans. The delay in providing an LVC obligated borrowers to continue making payments of principal and interest to Conduent, which Conduent would not have collected had it complied with its obligation to provide a timely LVC. Further, due to the delay in consolidation, borrowers were unable to obtain other benefits, such as lower monthly payments or the accrual of payments towards loan forgiveness.

12. Conduent produced an untitled, 192-page pdf spreadsheet that purported to provide information for 3,361 borrowers for whom Conduent serviced loans. The document shows that for 6,681 loans (or 90% of total) Conduent was delinquent in providing a LVC within the 10-day period allowed for processing the request. Conduent was also delinquent in providing an LVC for another 138 loans (or 2% of total) that had already been repaid.

13. The calculated damages are non-speculative and were incurred by the class members. The damages can be calculated on a class-wide basis using objective factors provided by Conduent.

**FACTUAL BACKGROUND**

14. Defendant Conduent services student loans, including loans made pursuant to the Federal Family Education Loan Program ("FFELP Loans"). As a loan servicer, Conduent issues

monthly invoices to and collects monthly payments from borrowers; provides borrowers with information about their loans; and handles applications for various programs available to distressed borrowers. Conduent is also responsible to track the principal, interest and payments for each loan.

15. FFELP Loan borrowers have a number of options available to them to lower their monthly payments or obtain loan forgiveness. For example, qualifying borrowers can enter the federal "Income-Based Repayment" ("IBR") program, which adjusts monthly payments based on the borrower's income, family size, and total amount of student loan debt (for payments as low as $0/month) and provides that borrowers may be eligible for forgiveness of any remaining balance after 25 years. The federal government offers a three-year interest subsidy to qualifying IBR enrollees.

16. FFELP Loan borrowers may also be eligible to enter into "forbearance," in which no payments are made for a certain period, with the unpaid amount of interest added to the principal at the end of the period ("capitalization"). FFELP Loan borrowers may also be eligible to enter into a "deferment," which similarly allows for no payments for a certain period, also sometimes resulting in capitalization of additional principal.

17. Beginning in 2013, the federal government offered other, more favorable programs, known as Pay As You Earn ("PAYE") and Revised Pay As You Earn ("REPAYE"). These programs offer monthly payments that are lower than IBR and offer forgiveness of any remaining balance after 20 years, instead of 25 years, in addition to other benefits. These programs, however, are only available to Direct Consolidation Loans. For an FFELP borrower to take advantage of these programs he or she must consolidate his or her FFELP loans into a Direct Consolidation Loan.

18. Another program available is the Public Service Loan Forgiveness ("PSLF") Program. The PSLF Program allows a borrower to consolidate his or her loans into a Direct Consolidation Loan and make "qualifying payments" while working for qualifying public-service employers (including the military). After 120 such payments, the borrower's remaining loan balance is forgiven. Because

only qualifying payments made after consolidation count towards the 120 payments, it is important for FFELP Loan borrowers who might otherwise be eligible to consolidate their student loans into Direct Consolidation Loans as early as possible.

19. A Direct Consolidation Loan is a federal loan made by the U.S. Department of Education that allows a borrower to combine one or more federal student loans into one new loan. Direct Consolidation Loans may provide borrowers with certain benefits, including lower monthly payments and access to a broader range of income-driven repayment options and loan forgiveness programs. These include the PSLF Program.

20. To convert a borrower's FFELP loans to a Direct Consolidation Loan, the FFELP servicer, such as Conduent, must provide payoff information for the relevant loans to the new Direct Consolidation Loan servicer on a specific document called a Loan Verification Certificate (LVC). The LVC contains basic information related to the borrower's loan such as outstanding principal balance and accrued interest. By statute, the FFELP servicer must provide an LVC to the Direct Consolidation Loan servicer within ten business days of the request.

**ANALYSIS OF LOAN DATA FROM CONDUENT**

21. The student loan borrowers in the Class sought LVCs with respect to a total of 7,394 loans. In 90% of the requests, Conduent failed to provide an LVC to the Direct Consolidation Loan servicer within in the mandated10-day period. On average, borrowers had to wait almost six months to receive the LVCs.[2] More than 9% of the borrowers had to wait one year or longer for the LVC.[3]

---

[2] CES provided a date on which the LVC was provided to the borrower on 6,985 loans. The average time taken by CES to provide this information was 173 days.

[3] For 652 loans, CES took one year or longer to process the LVC.

Case 1:18-cv-00075-DNH-CFH Document 73-7 Filed 02/18/21 Page 6 of 19

| Student Loan Data | | |
|---|---|---|
| Information on Loans | Number of Loans | Percentage of Total |
| LVC Supplied on Time | 180 | 2.5% |
| Loans Already Paid in Full | 138 | 1.9% |
| Loan Documents with No Date for LVC or PIF [4] | 394 | 5.3% |
| Loans with no Loan Payments | 4079 | 55.2% |
| Loans with Payments less than $1000 | 2318 | 31.4% |
| Loans with Payments over $1,000 | 285 | 3.9% |
| Total Loans | 7,393 | 100% |

22. Conduent provided data for 3,361 borrowers that sought to obtain an LVC during the during the period from March 16, 2015, to December 13, 2016 ("Period"). To determine the damages that were suffered by the student loan borrowers, I calculated the number of days that Conduent was delinquent in responding to the borrower with the LVC. This was done by subtracting the number of days between the First Return Date to TIVA from the First Received Date from TIVA. Then I calculated the number of months by dividing by 30.

23. I then calculated the amount of payments made on each of the loans and divided the loans into three categories:

- Loans for which there were no payments.
- Loans for which the total payments were under $1000.

[4] The Company has stated that these loans were paid in full within the 10-day grace period. There is no information that supports this statement, other than the deposition testimony of Jamie Broedel, January 13, 2021.

- Loans for which the total payments were over $1000.

| I. Loans with No Payment | |
|---|---|
| Number of Loans | 4,079 |
| Average Delay | 5.1 Months |
| Statutory Damages[5] | $1,139,800 |

24. For loans for which no payments were made, the actual damages for each month was less than $50. I understand that where actual damages are lower than $50, GBL § 349 provides that a borrower can seek to recover $50 on his or her claim for the statutory violation. As a result, I multiplied the number of months beyond the 10-day grace period times $50.

| II. Loans with Less than $1,000 in Payments | |
|---|---|
| Number of Loans | 2,318 |
| Average Delay | 5.9 Months |
| Actual Payments | $535,809 |
| Treble Damages[6] | $1,195,272 |
| Higher of Treble or Statutory Damages[7] | $1,367,833 |

25. For loans for which payments totaled less than $1,000, I calculated damages in three different ways.

---

[5] Statutory Damages are based on a $50 penalty for each month the borrower has to wait to receive the LVC beyond the initial 10-day grace period.

[6] I understand that actual damages may be trebled in the calculation of damages requires the trebling of actual payments with a $1,000 cap per loan.

[7] Statutory Damages are defined here as the $50 penalty for each month the borrower had to wait to receive the LVC beyond the initial 10-day grace period.

26. In the first method, I multiplied (x) the number of months beyond the 10-day grace period, times (y) the actual payments made. For example, Borrower No. 2010 had five loans, totaling $19,797. The borrower made a total of $667.32 in principal and interest payments during the delay period.

27. In the second method, I multiplied the payments during the delay period for each loan, and multiplied by three (i.e., trebled). The calculation of damages for each loan was then capped at $1,000. I did this calculation because I understand that under GBL § 349, the Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to $1,000 if the Court finds Conduent willfully or knowingly violated that section. In the case of Borrower No. 2010, the cap would not apply because these payments were divided among the five different loans.

28. I noticed that some of these loan payments were very small, including payments of less than $1.00. For example, Borrower #2679 had two loans, 2679-1 and 2679-2, for which he or she made total interest payments of $7.48 and $8.30, respectively, during the Period. Conduent took almost eight months to respond to the borrower with the LVC balance. If I used the calculation method used for other loans for which payments were made, the damages for each loan would be $22 and $25, respectively. If I used the alternative calculation for loans where no payments were made, then the damages would be $400 for each loan.[8]

29. The third method compared the applicable statutory damages for loans with no payments with the trebled actual damages and selected the higher of the two damage numbers. These three damage calculations account for the difference between the high and the low damage conclusions.

---

[8] The calculation was made on the number of months for which Conduent was delinquent multiplied by $50. (8 x $50).

| **III. Loans with More than $1,000 in Payments** | |
|---|---|
| Number of Loans | 285 |
| Average Delay | 9.9 Months |
| Actual Damages[9] | $1,139,800 |

30. Approximately 4% of the student loans had payments greater than $1,000 during the delay period. The actual damages associated with these loans consisted of the payments made during the period. On average, it took Conduent 10 months to respond to these borrowers' requests for an LVC balance. This is roughly double the average amount of time required for the other borrowers.

31. To account for the damages, it was important to eliminate any loans where the loan was paid in full prior to the request for the LVC (or the First Date from TIVA). In these cases, the loans had been repaid, some as much as three to eight years before the request for an LVC was made. In the case of Borrower #3191, for example, they had two loans which were paid in full in 2007. They requested an LVC on October 1, 2015. Conduent took almost a full year to respond to their request.

[9] Actual Damages are defined as equivalent to actual payments made during the period.

**CONCLUSIONS**

| Calculation of Damages | | | |
|---|---|---|---|
| | Statutory Damages or Actual Damages | Actual Damages Trebled and Capped | Higher of Treble or Statutory Damages |
| Loans with No Payments | $1,139,800 | $1,139,800 | $1,139,800 |
| Loans with Payments < $1,000 | $535,809 | $1,195,272 | $1,367,833 |
| Loans with Payments > $1,000 | $844,295 | $844,295 | $844,295 |
| Total | $2,519,904 | $3,179,367 | $3,351,928 |

32. Ultimately, as set forth above, damages on an individual and Class wide basis can be calculated using the data provided by Conduent. The amount of the damages will depend on how the Court resolves any issues regarding statutory and treble damages, but upon resolution of those issues, the Class's damages will be readily calculable.

33. I reserve the right to supplement and amend my opinions to take into account information learned subsequent to the date of this report.

Dated: February 12, 2021

By: ______________________________
William Jeffers, CFA

6821 W. North Avenue
Suite 203
Oak Park, Illinois 60302

GRIFFING GROUP

708.383.9050
www.TheGriffingGroup.com

## CURRICULUM VITAE: William Jeffers, CFA

### PROFESSIONAL EXPERIENCE

William Jeffers, CFA is a Principal at The Griffing Group. Mr. Jeffers provides financial valuation services to attorneys and corporate clients for use in complex commercial litigation and M&A transactions. Since joining the firm in 2010, Mr. Jeffers has been retained to provide expert witness testimony and expert consulting services in a number of litigation matters adjudicated in the Delaware Court of Chancery and other venues. His analysis has focused on determining the value of securities and measuring economic damages in M&A litigation, shareholder disputes, and contract disputes.

Mr. Jeffers has spent his entire professional career analyzing businesses, business interests and financial assets to determine their value. During the past 15 years, Mr. Jeffers has valued business interests for financial and tax reporting purposes, in addition to his litigation work. Prior to this, Mr. Jeffers spent 15 years as a commercial banker responsible for providing financing for large and medium-sized companies in various industries, located primarily in the Midwest. As part of the lending process, Mr. Jeffers was responsible for conducting credit analyses and presenting to credit committees, monitoring the creditworthiness of borrowers, managing teams of loan officers and credit analysts, and responding to requests from regulators.

Managing Director, **FMV Opinions, Inc**., 2008-2009

- Opened Chicago office, which was designed to cover the Midwest. Provided valuation consulting services primarily for gift and estate planning purposes.

Regional Director, **O'Connor & Associates**, 2007-2008

- Opened Chicago office to penetrate the Midwestern market. Originated and managed engagements for purchase price allocation related to mergers and acquisitions.

Managing Director, **American Appraisal Associates, Inc.**, 2001-2007

- Provided client service coverage for a wide array of appraisal and valuation services for large and mid-sized companies and intermediaries throughout the Midwest. Appraisal and valuation projects included purchase price allocations, fairness opinions for mergers and acquisitions, solvency opinions for corporate spin-offs and corporate restructurings, business valuations for income tax purposes, real estate appraisals for purchase, sale, and sale/lease back transactions, and appraisals for insurance underwriting.

Vice President, **CBIZ Valuation Counselors**, 2000-2001

- Provided client service and business development support for valuation consulting services to companies and intermediaries located in the Chicago metropolitan area.

Founder and Consultant, **Bridge Consulting Group, Ltd.,** 1998-2000

- Founded an independent practice designed to provide financial consulting to small and medium-sized companies seeking financing. A key project included assisting a small New York firm to raise public debt through a 144(a) private placement.

Vice President and Team Leader, **Crédit Agricole**, 1995-1998

- Managed and recruited a team of five corporate lending officers and two credit officers. Provided corporate banking products (mostly credit products) to approximately 80 domestic corporations based in the Midwest and along the East Coast. Many of the corporate loans in the $2 billion portfolio of credit facilities were committed to highly leveraged companies.

Vice President and Team Leader, **The Industrial Bank of Japan, Ltd.**, 1988-1995

- Managed and recruited two teams of corporate lending officers. Initiated corporate banking relationships with a number of Fortune 1000 companies and provided an array of domestic and foreign currency loans and derivatives. Facilitated loans and letters of credit to electric and gas utilities throughout the Midwest.

Assistant Vice President, **Banque Indosuez**, 1986-1988

- Developed corporate banking relationships with a variety of industrial firms in the Midwest and provided a full range of credit and capital market products, including interest rate and currency swaps and options. Originated loans and letters of credit to electric and gas utilities throughout the Midwest.

Commercial Loan Officer, **Banca Nazionale del Lavoro**, 1985-1986

- Built a small commercial loan and trade credit portfolio for the Chicago branch of this large Italian commercial bank. Most of the credit portfolio was developed through participations with money center banks. Established and managed a portfolio of $170 million of floating rate notes.

Credit Analyst, National Bank of Detroit, 1983-1984

- Completed formal credit training program.

Case 1:18-cv-00075-DNH-CFH Document 79-3 Filed 02/19/21 Page 15 of 19



## ACADEMIC & PROFESSIONAL CREDENTIALS

- CFA® Charterholder, CFA Institute
- Master of Business Administration, Finance, Investment and Banking, University of Wisconsin, 1983
- Master of Science, Urban and Regional Planning, Concentration: Economic and Fiscal Planning, University of Wisconsin, 1982
- Master of Arts, Political Science, Concentration: Political Economy, University of Wisconsin, 1980
- Bachelor of Arts, Government, Oberlin College, 1977

## EXPERT WITNESS ENGAGEMENTS

### State of Delaware

<u>Court of Chancery</u>

- AM General Holdings LLC v. The Renco Group, Inc., et al., C.A. No. 7639-VCS, December 2018.
  - Provided a rebuttal expert report and deposition testimony regarding issues related to loans made by an affiliated company to The Renco Group. The dispute settled without a formal opinion from the Court.
- In Re Appraisal of Columbia Pipeline Group, Inc., C.A. No. 12736-VCL, October 2018.
  - Provided opening and rebuttal expert reports and deposition and trial testimony regarding the fair value of the common stock of Columbia Pipeline Group, Inc. in connection with appraisal litigation related to its acquisition by TransCanada Corporation.
- City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al., C.A. No. 12481-VCL, January 2017.
  - Provided opening and rebuttal expert reports regarding the fair value of the common stock of ExamWorks, a provider of independent medical examinations that was taken private.
- Charles Kusnyer, et al. v. Platinum Energy Resources, Inc., et al., C.A. No. 7063-VCMR, November 2015.
  - Provided an expert report regarding the fair value of the common stock of Platinum Energy Resources, an oil and gas production company that was taken private by its majority owner.

- In Re Globe Specialty Metals, Inc. Stockholders Litigation, C.A. No. 10865-VCG, July 2015.
  - Provided opening and rebuttal expert reports regarding economic damages incurred in the stock-for-stock merger of Globe Specialty Metals, Inc. and Grupo FerroAtlántica, S.A.U.

- City of Miami General Employees' and Sanitation Employees' Retirement Trust, et al. v. C&J Energy Services, Inc., et al., C.A. No. 9980-VCN, November 2014.
  - Provided an expert report and deposition testimony regarding the adequacy of the consideration to be paid to shareholders of C&J Energy Services in a proposed merger with a subsidiary of Nabors Industries Ltd.

- In Re Safeway Inc. Stockholders Litigation, C.A. No. 9445-VCL, August 2014.
  - Provided an expert declaration regarding the economic impact of a settlement related to changes to contingent value rights offered as part of the consideration in the acquisition of Safeway.

- Blackthorn Partners, L.P. v. John C. Malone, et al., C.A. No. 5260-VCS, January 2012.
  - Calculated economic damages related to a series of complex restructuring transactions in the broadcast media industry.

- Viamericas Corp., et al. v. MicroVest I, L.P., et al., C.A. No. 6741-VCL, November 2011.
  - Provided deposition and trial testimony regarding the economic impact of tag-along rights on an institutional shareholder's attempted sale of its equity interest in a money transfer services company.

## State of California

Superior Court of California – County of Los Angeles

- In Re 99¢ Only Stores Shareholder Litigation, Lead Case No. BC457251, March 2011.
  - Provided an expert declaration regarding the adequacy of proxy disclosures in a going-private transaction for a discount retailer.

## State of Ohio

Franklin County Court of Common Pleas – Division of Domestic Relations

- Pukita v. Pukita, Case No. 11DR-02-0607, July 2014.
  - At the request of the Court, provided an expert report and deposition testimony regarding the value of an executive recruiting and staffing company.

## United States District Court

Eastern District of New York

- Moses, et al. v. Apple Hospitality REIT Inc., Case No. 1:14-cv-03131, August 2017.
  - Provided an expert declaration which estimated damages caused by the unfair pricing of shares purchased through the REIT's dividend reinvestment program.

Southern District of New York

- In Re Helios and Matheson Analytics, Inc. Securities Litigation, Case No. 1:18-CV-06965-JGK, July 2020.
  - Provided an expert affidavit rebutting the claim by the U.S. Trustee that the defendants (company management) recklessly managed the company and caused the company more than $100 million in damages.

## LITIGATION SUPPORT

## State of Delaware

Court of Chancery

- LongPath Capital, LLC v. Ramtron International Corporation, C.A. No. 8094-VCP, 2014.
  - Provided analysis related to this appraisal case concerning the fair value of Ramtron International Corp., a semiconductor company.

- Frank G. Pilkiewicz, Ph.D., et al. v. Transave, LLC, C.A. No. 6319-CS, 2013-2014.
  - Provided analysis related to this appraisal case concerning the fair value of Transave, LLC, a biopharmaceutical company.

- In Re Google Inc. Class C Shareholder Litigation, Consol. C.A. No. 7469-CS, 2012-2013.
  - Provided analysis related to a motion to enjoin Google's issuance of a new class of nonvoting shares.

- In Re TPC Group, Inc. Shareholders Litigation, C.A. 7865-CS, 2012-2013.
  - Provided analysis related to a motion to enjoin the acquisition of petrochemical company TPC Group, Inc. by First Reserve Corp. and SK Capital Partners.

- Edgewater Growth Capital Partners, L.P., et al. v. H.I.G. Capital, Inc., et al., C.A. 3601-CS, 2012.
  - Provided analysis regarding the fair market value of Pendum, LLC, an ATM servicing company.

- New Jersey Carpenters Pension Fund v. infoGROUP, Inc., et al., C.A. No. 5334-VCN, 2011-2013.
  - Provided analysis regarding the fair value of infoGROUP, Inc., a marketing services and data company.

- In Re El Paso Corporation Shareholder Litigation, C.A. 6949-CS, 2011-2012.
  - Provided analysis related to a motion to enjoin the acquisition of natural gas company El Paso Corp. by Kinder Morgan, Inc.

- In Re Massey Energy Co. Derivative and Class Action Litigation, Consol. C.A. No. 5430-VCS, 2011-2012.
  - Provided analysis related to a motion to enjoin the acquisition of coal company Massey Energy Co. by Alpha Natural Resources, Inc.

- In Re Novell, Inc. Shareholder Litigation, C.A. No. 6032-VCN, 2011-2012.
  - Provided analysis related to a motion to enjoin the acquisition of software company Novell, Inc. by Attachmate Corp.

**State of Illinois**

<u>Circuit Court of Cook County</u>

- Burke v. McNally, et al., No. 04 L 12109, 2010-2011.
  - Provided analysis regarding the fair market value of a private equity firm in connection with this shareholder dispute.

- Blackhawks 2010, Inc. (f/k/a The Higher Gear Group, Inc.) v. Jeffrey Wulbert, No. 10 CCH 54790, 2010-2013.
  - Provided analysis regarding the fair value of a customer management software firm in connection with this shareholder dispute.

**State of New Jersey**

<u>Superior Court, Chancery Division</u>

- In Re Pamrapo Bancorp Shareholder Litigation, Docket No. C-89-09, 2013.
  - Provided analysis regarding the fair market value of Pamrapo Bancorp, Inc.

**State of Oklahoma**

<u>District Court of Stephens County</u>

- James M. Ferguson, et al. v. J.R. Montgomery Bancorporation, No. CJ-2010-363R, 2010-2013.
  - Provided analysis regarding the fair value of J.R. Montgomery Bancorporation.

**State of Texas**

<u>District Court of Harris County</u>

- In the Matter of the Marriage of R.E.D. and S.C.D., 2010.
  - Provided analysis regarding the fair market value of a large gasoline and convenience store chain in connection with this marital dissolution.